[Crim. No. 310. First Appellate District.—August 2, 1911.]

## THE PEOPLE, Respondent, v. ROBERT THOMPSON, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE OF ACCOMPLICE—CORROBORATION.— Upon a criminal prosecution for murder, the rule that the testimony of an accomplice, called as witness to the offense, must be corroborated, does not require that the evidence of the accomplice shall be corroborated in all of the essential elements of the crime charged; but, on the contrary, it is sufficient if the corroborating evidence, considered by itself, tends in some way to connect the defendant with the commission of the crime, even though, if it stood alone, it would be entitled to but little weight as evidence of guilt.

ID.—MURDER CAUSED BY ABORTION—EVIDENCE OF ACCOMPLICE FULLY CORROBORATED.—Where the offense charged was of murder caused by an abortion, it is held, upon a review of the evidence corroborating the testimony of an accomplice, it is fully sufficient, of itself, to connect the defendant with the commission of the crime.

ID.—NON-NECESSITY OF ABORTION TO SAVE LIFE.—If it be conceded that it was for the prosecution to show the non-necessity of causing an abortion to save life, and not upon the defendant to show its necessity, it is held that its non-necessity to save life was fully established by a showing on the part of the people that the deceased was

twenty-three years of age and in good health at the time of the operation, and that when she died therefrom, the defendant cut her body into parts, covered it with corrosive acid, and buried it clandestinely, and remained silent when accused of the crime.

ID.—TESTIMONY OF NURSE AS ACCOMPLICE—PLACENTAL TISSUE SEEN IN VESSEL AFTER ABORTION.—The testimony of the nurse who was an accomplice to the operation that she knew what placental tissue was, and that after deceased had been in the operating room she saw such tissue there in a vessel, was admissible, both as testimony to a fact and the evidence of one sufficiently experienced and informed on the subject to be regarded as an expert.

ID.—REQUESTED INSTRUCTION AS TO HYPOTHETICAL QUESTION TO EXPERT NOT BASED ON EVIDENCE — REFUSAL NOT ERROR — COMMON SENSE OF JURY.—It was not error for the court to refuse a requested instruction, that if a hypothetical question propounded to an expert witness embraced a statement which was not supported by the evidence, the opinion of the expert in answer thereto would be valueless, since it embodies no principle of law, and would have simply told the jury what their own common sense would have informed them.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

J. J. Greely, T. L. Fitzpatrick, and Robert Ferral, for Appellant.

U. S. Webb, Attorney General, J. Charles Jones, Deputy Attorney General, and James F. Brennan, Assistant District Attorney, for Respondent.

KERRIGAN, J.—The defendant, charged with murder, was tried and found guilty of murder in the second degree. He prosecutes this appeal from the judgment.

The defendant relies on four points for a reversal of the judgment.

1. It is admitted that Marie Messerschmidt, on whose testimony the actual commission of the offense was established, was an accomplice; and defendant contends that her testimony was not corroborated as to some of the material elements of the crime. But the rule does not require, as seems to be thought by defendant, that the accomplice shall

be corroborated in all the essential elements of the offense. On the contrary, it is sufficient if the corroborating evidence, considered by itself, tends in some way to connect the defendant with the commission of the crime.

In *People* v. *Bunkers,* 2 Cal. App. 197, 205, [84 Pac. 364], Mr. Justice McLaughlin, considering the same question, said: "While corroborating evidence must create more than a mere suspicion, it is not required that it be absolutely convincing. Nor need it extend to every fact and detail covered by the statements of the accomplice. It is sufficient if, standing alone, it tends to connect the defendant with the crime."

In *People* v. *Leavens,* 12 Cal. App. 178, [106 Pac. 1103], Mr. Justice Cooper, commenting on the rule declared by section 1111 of the Penal Code, said: "The actual commission of the offense may be established by the evidence of the accomplice; but the law, in order to protect innocent men from being convicted, provides that the evidence of the accomplice alone shall not be sufficient to justify a conviction, but that there must be other independent evidence which 'tends to connect the defendant with the commission of the offense.' The evidence outside of that of the accomplice need not be sufficient to establish the guilt of the defendant, but it must in some way tend to implicate the defendant and connect him with the transaction and with the crime."

In another case it is said: "It [the corroborating evidence] 'need not be strong; it is sufficient if it tends to connect the defendant with the commission of the offense though, if it stood alone, it would be entitled to but little weight.' Nor need it extend to every fact and detail covered by the statements of the accomplice." (*Eppinger* v. *Kendrick,* 114 Cal. 620, [46 Pac. 613].)

In the case at bar we have facts and circumstances in abundance corroborating the accomplice and connecting the defendant with the commission of the offense. The testimony of the accomplice, Marie Messerschmidt, a nurse, showed that the defendant, at San Francisco, on April 9 and 10, 1910, performed a criminal abortion on one Eva Swan; that Eva Swan remained at the home and office of the defendant, under the joint care of the witness and the defendant, until the 21st of that month, when, as the result

of the operation, she died, whereupon the defendant placed her dead body in a trunk, and on the evening of the 21st he and one Willie Saack hired an expressman, with whose aid they removed the body to a vacant house at No. 350 Eureka street in San Francisco, and after two nights' work succeeded in burying the body under the floor of the basement of the vacant house, which had been rented for that purpose. Previous to this the defendant had shown the witness a bottle of acid, which he said he was going to pour over the dead woman's face so that she could not be identified. This witness further testified that in the month of May she and the defendant went to Highland Springs, where, a few days after their arrival, the defendant was visited by two men from San Francisco, who, the defendant told her, had learned of the burial of Eva Swan from Willie Saack, and who were trying to blackmail him.

The evidence in the case corroborating the accomplice and which tends to establish the defendant's connection with the crime, is as follows: Paul Parker, a witness for the people, testified that he called and saw Eva Swan twice at 1293 Golden Gate avenue, but that on April 14th, when he called again, he did not see her, and was told by the defendant that she was too ill to receive visitors. The defendant also told the witness that Eva Swan's sister had sent $200 with which to pay the expenses of caring for Eva Swan in some sanitorium to which she would be sent for proper treatment. C. F. Large, a druggist employed in a drugstore located near the place of business of the defendant, testified that on or about the 19th or 20th of April he sold to him a large bottle of nitric acid, which bottle was similar to one in size and other respects found by Officer M. V. Burke with the buried body of Eva Swan. Evelyn Bean, who lived all the month of April in the immediate neighborhood of No. 350 Eureka street, testified that on or about the 23d of April she saw the defendant with another man at said premises. G. A. Pike testified that he visited the defendant at Highland Springs about the middle of May, and there told the defendant that some boys, in digging around the basement of the Eureka street house, had found a condition of things that aroused their suspicions; that he advised the defendant to raise $300 to send the boys East; to which proposition

the defendant replied that he did not have the money, but that likely he would be able to give the boys something to do and in that way keep them quiet. The house at Eureka street had, according to the testimony of another witness, been rented for one month; and in this conversation at Highland Springs the defendant requested Pike, so Pike testified, to rent the house for another month. Here we quote from the record: "Q. What did he (defendant) say about the house on Eureka street? A. He said, 'Are you willing to go out and rent the house for me for another month?' and I said 'Yes.' He said, 'Don't you think that would give the acid plenty of time to get in its work?'" The witness had a subsequent conversation with the defendant in a saloon in San Francisco, at which Willie Saack and Ben Gordon were present, in which Pike again advised the defendant to raise $300 and send away the boys who had, as he pretended, learned about the interment of the body. The witness further stated that at this time he told the defendant he would need a little money, and that although the defendant was not indebted to him he gave him $30. Ben Gordon testified that he with Pike visited the defendant at Highland Springs in May; that toward the last of the following September he demanded $18 of the defendant; that the defendant called him a "son of a bitch," gave him two dollars and told him to get out of town, or he would shoot him or "rip" him "wide open with lead"; that thereupon he left the defendant, saying "I am liable to fool you."

From the testimony of other witnesses it is learned that the defendant is not a licensed physician, although he was known as "Dr. Grant," and when the officer called at his place of business on September 23d to arrest him he said that he was not "Dr. Grant," but was waiting for him, whereupon the officers called in Ben Gordon (who was waiting near by), when the defendant was identified and arrested. According to the testimony of Detective Edward J. Wren, the defendant, on the day after his arrest, denied that he had ever been in or around the premises 350 Eureka street; that upon being brought from his cell into the presence of Miss Messerschmidt to listen to a statement of the case by her he ran away, and upon being forced to return tried to persuade her "not to talk." She, however, said

that he was the man who "performed the operation on Eva Swan at 1293 Golden Gate avenue," and that he was also the man "who put the body of Eva Swan in the trunk." The defendant listened to these accusations and remained silent.

From this brief statement of the evidence it is so apparent that defendant's contention is without merit that comment is unnecessary. We therefore pass to the next point.

2. Defendant claims that the evidence introduced by the people fails to show, in accordance with section 274 of the Penal Code, that the operation was not necessary to save the life of Eva Swan.

Conceding for the sake of argument (as was done in *People* v. *Balkwell*, 143 Cal. 259, [76 Pac. 1017]), that it was for the prosecution and not the defendant to establish this fact, the fact was established in this case. The evidence of the people in part shows that the deceased was twenty-three years of age and in good health at the time of the operation; that when she died the defendant cut her body into parts, covered it with a corrosive acid, and buried it clandestinely as before narrated. These facts and circumstances, together with his conduct when arrested and when accused of the crime by Miss Messerschmidt, lead irresistibly to the inference that the operation was not performed to save the life of the deceased.

3. The witness Messerschmidt testified that she knew what placental tissue was; and that after the defendant and the deceased had been in defendant's operating room at Golden Gate avenue she saw such tissue there in a vessel. This was not expert testimony; it was testimony as to a fact. But even if it be regarded as expert testimony, still the contention of the defendant that the witness was not qualified to give such testimony is unavailing, for the evidence in the case is ample to show that she was sufficiently experienced and informed on the subject to be regarded as an expert.

4. The defendant assigns as error the court's refusal to instruct the jury that if a hypothetical question propounded to an expert witness embraced a statement which was not supported by the evidence, the opinion of the expert in answer thereto would be valueless.

16 Cal. App.—48

The instruction if given would have simply told the jury what their own common sense would have informed them; and as it embodied no principle of law, the refusal to give the instruction was not error. It has been repeatedly so held in this state. (*People* v. *Kirby*, 15 Cal. App. 264, [114 Pac. 794]; *People* v. *Barthleman*, 120 Cal. 7, [52 Pac. 112]; *People* v. *Methever*, 132 Cal. 326, [64 Pac. 481].)

The judgment is affirmed.

Lennon, P. J., and Hall, J., concurred.