[Crim. No. 388.  First Appellate District.—September 20, 1912.]

THE PEOPLE, Respondent, v. M. L. BREWER, Appellant.

CRIMINAL LAW—MURDER—ACCOMPLICE—REQUESTED INSTRUCTION PROP-
ERLY REFUSED—PROVINCE OF JURY.—In a prosecution for murder,
the court properly refused a requested instruction as follows: "You
are hereby instructed that if you entertain a reasonable doubt as
to whether any particular witness was or was not an accomplice, you
are to give the benefit of such doubt to the defendant, and for the
purposes of this case you must consider such person and such wit-
ness as an accomplice," as interfering with the province of the jury
to determine the facts in the case, and as implying that the crime
of murder had been committed, and the *corpus delicti* established,
and as importing a charge with respect to matters of fact in viola-
tion of section 19 of article VI of the constitution.

ID.—MURDER IN CRIMINAL ABORTION—OPERATION UNNECESSARY TO PRE-
SERVE LIFE — SUFFICIENCY OF EVIDENCE.—Where the murder was
committed as the result of a criminal abortion upon a pregnant
woman, it is held that evidence that before the abortion the deceased
was apparently in perfect health, except as to the usual symptoms of
pregnancy, is sufficient to establish the fact that the operation was
not necessary to preserve life.

ID.—DYING STATEMENT OF DECEASED AS TO HEALTH BEFORE ABORTION.—
Testimony of a question and answer put to the deceased as a part
of her dying statement, that she was in good normal health at the
time of the operation, except for the usual illness of pregnancy, was
admissible.

ID.—TESTIMONY OF HUSBAND OF DECEASED—PROOF OF CRIME—ACCOM-
PLICE NOT SHOWN.—The husband of the deceased, who went with
his pregnant wife, in response to her urgent request, to the residence
of the defendant, with knowledge of her purpose, but without aiding
or abetting or encouraging her therein, and who did not assist the
defendant therein, cannot be said, as matter of law, to be an accom-
plice, whose testimony in proof of the crime required corroboration.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE THAT HUSBAND WAS AN
ACCOMPLICE—DISCRETION—REVIEW UPON APPEAL.—Where a motion
for a new trial was sought on the ground of newly discovered evi-
dence that the husband was an accomplice, the court did not abuse
its discretion in denying the same, where there is nothing in the evi-
dence materially different from the testimony of the husband at the
trial.  Such motion was peculiarly addressed to the discretion of the
court below, and in the absence of an abuse of its discretion, it will
not be interferred with upon appeal.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Snook & Church, for Appellant.

U. S. Webb, Attorney General, and John H. Riordan, for Respondent.

HALL, J.—The defendant was convicted of the crime of murder in the second degree. Before judgment was rendered she moved the court for a new trial, which being denied and judgment rendered against her of imprisonment in the state prison for the period of thirteen years, she took an appeal to this court from the judgment and order.

The evidence shows that on the evening of September 28, 1911, Annie E. Enrick, then advanced in pregnancy about three months, repaired to the residence of the defendant, also a woman, for the purpose of procuring an abortion to be performed upon her by defendant. That the defendant operated upon her in an attempt to procure an abortion; that said Annie E. Enrick at once became so ill, weak and faint that it was with great difficulty that she could return from the residence of defendant in Berkeley to her home in East Oakland, though assisted by her husband, who had accompanied her to the residence of the defendant. That she was at once put to bed, and a physician called, who attended her until she died as a result of the operation, at a hospital to which she had been removed.

1. The court gave all the instructions requested by defendant, with some slight modifications, not complained of, save one, which the court refused. It is the refusal to give this instruction which is first urged as a ground for reversing the judgment.

The refused instruction is as follows: "You are hereby instructed that if you entertain a reasonable doubt as to whether any particular witness in this case was or was not an accomplice, you are to give the benefit of such doubt to the defendant, and for the purpose of this case you must consider such person and such witness an accomplice."

We think that this instruction transgressed upon the province of the jury to determine the facts in the case. The concluding language of the requested instruction: "and for the purpose of this case you must consider such person and such witness an accomplice," implies that the crime of murder had in fact been committed, and the *corpus delicti* fully established. For manifestly there could be no accomplice if no crime had been committed. To follow the rule laid down in the instruction would require the jury to assume that the crime charged had in fact been committed, even though upon the whole case they had a reasonable doubt thereof. This being so the court was justified in refusing the requested instruction, for the court should not charge the jury with respect to matters of fact. (Const., art. VI, sec. 19.)

2. It is next claimed that the court erred in refusing to strike out the answer to the following question put by the district attorney to the witness, Dr. Webber: "Q. Well, then, do I understand you to say that it is your opinion that in this case death was caused either by the injection of some substance or drug into the uterus, which caused a suppression of urine, or that the suppression of urine was the result of shock induced by the injection of some substance or instrument into the uterus, or both?"

The answer to this question was "It might be both," and the ground of the motion was that the answer was not responsive.

Clearly the answer was directly responsive to the concluding portion of the question. Because of the complex nature of the question the answer was not as clear as it might have been, but the meaning of the witness was at once made perfectly clear by explanatory answers made to questions put to him by the court. The court did not err in the ruling complained of.

3. It is next claimed that the court erred in refusing to strike out the following question and answer testified to by the witness Hynes as a part of the dying statement of Mrs. Enrick: "Q. Were you in good normal health at the time you visited the house of this woman? A. I was except for the usual illness of pregnancy."

The witness was relating to the jury the statement made to him by the decedent, which statement seems to have been elicited by questions put by the witness to decedent. In this

instance the witness stated the question as above indicated, and then stated the answer made thereto. Defendant raised no objection until after the answer was stated, when she moved to strike it out upon the ground that "It does not relate to the cause of death, and is not competent."

We think the court was justified in refusing to strike out the evidence for two reasons:

(a) When the witness stated the question that he had put to the decedent it was perfectly apparent to what subject matter any answer that decedent might make thereto would relate. It was then that the defendant should have objected to the witness giving the answer to the question. She should not be allowed to speculate on the chance that the answer might be favorable to her side of the case, and if, on the answer being given it prove unfavorable, to have the right to have it struck out. The same rule should apply as applies where a litigant fails to object to a question put to a witness. Under this rule appellant's motion came too late.

(b) The question put to the dying woman and her answer were in truth part of the *res gestae* of the operation which resulted in her death, and for that reason were admissible as a part of her dying statement. The situation and condition of the parties at the time of the performance of the acts which result in the death are, we think, without doubt part of the *res gestae*. This was all that the evidence complained of related to, and for that reason it was admissible.

The fourth point urged for a reversal is that the court overruled the objection of defendant to the question, "I will ask you to state whether or not an opening such as you found in the uterus of Annie E. Enrick could have been made by a syringe, hard rubber syringe."

The objection was that "it is irrelevant, incompetent and immaterial, and calls for an expression of opinion on a subject on which the doctor is not entitled to express an opinion."

It is now claimed that the evidence does not show what kind of a syringe was used. This point was not raised by the objection, and cannot now be raised for the first time. There is no merit in the contention that the matter was not such as was the subject of expert testimony. A physician may well be presumed to know more about the strength and firmness of tissues of the uterus and the membrane that closes the

natural opening thereto in pregnancy than does a layman, and therefore is better able to judge whether or not an artificial opening therein which he had seen could be made by a given implement. It certainly was within the discretion of the court to allow the question.

5. It is next urged that the verdict is contrary to the evidence in that, as it is claimed, it was not shown that the operation was not necessary to preserve the life of the deceased.

There is no merit in this contention. It is not at all clear that the proof of such matter devolves upon the people. (Underhill on Criminal Evidence, 347; *People* v. *Balkwell*, 143 Cal. 259, [76 Pac. 1017].) But conceding, for the purposes of this opinion only, that the fact must be established by the people, the proof upon this point was ample. The evidence shows that Mrs. Enrick was thirty-nine years of age and was the mother of three children; that she went to the residence of the defendant in Berkeley from her residence in East Oakland, and at that time was apparently in perfect health except for the usual symptoms of pregnancy. There being not a word in the evidence to the contrary, this was ample to support the negative proposition that the operation was not necessary to preserve life. It is a matter of common knowledge that it is the rare exception that such an operation is necessary to preserve life, and all the circumstances surrounding and attending the operation performed in this case show without doubt that it was resorted to for no such benign purpose.

6. It is next claimed that there was no evidence other than that of accomplices that tended to prove defendant guilty.

This claim is also without merit. The jury may well have believed that Mr. Enrick was not an accomplice, that he simply went with his wife at her urgent request to the residence of defendant—true, with knowledge of her purpose, but without aiding and abetting therein, or advising and encouraging her therein. There is no pretense that he was present when the operation was performed, or that he assisted defendant therein or spoke to her about the matter. Except that he was the husband of the pregnant woman his conduct was quite similar to that of the witness in *People* v. *Balkwell*, 143 Cal. 259, [76 Pac. 1017], who was held not to have been an accomplice. At any rate, we cannot say as matter of law that the

evidence was such as to compel the conclusion that he was an accomplice. There is ample in his evidence that tends to show that defendant performed a criminal operation upon Mrs. Enrick. The testimony of Miss Thompson also tends to show the same fact. The jury may well have considered that the statement made by defendant to Miss Thompson, to the effect that Mrs. Enrick was two and a half or three months along in pregnancy when she came to her (defendant), was, considering the circumstances under which it was made, a virtual admission that she had performed the operation in question. The evidence of the physicians amply proves that an attempt to produce an abortion had been committed upon the person of decedent, and that she died as a result thereof.

7. In support of the claim of newly discovered evidence, defendant presented the affidavits of two persons as to statements made to them by the witness Enrick, husband of decedent. The only claim made in the brief of appellant as to these affidavits is that they tend to prove the husband of decedent an accomplice in the crime committed. We have carefully examined these affidavits, and find nothing in them bearing upon this point that differs materially from the testimony given by the husband himself. The granting or refusing a new trial upon the ground of newly discovered evidence is a matter peculiarly within the discretion of the trial court, and this court never interferes with the exercise of such discretion unless it is clear that such discretion has been abused. (*People* v. *Sing Yow,* 145 Cal. 1, [78 Pac. 235], and cases there cited.) No such condition exists in this case.

This disposes of all the points called to our attention by appellant. In conclusion we may add that we have carefully read and examined the entire record including the evidence, and find no reason to think that the trial of defendant has resulted in a miscarriage of justice by reason of any ruling of the trial court or for any other reason.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.