[Crim. No. 2290.   First Dist., Div. One.   July 8, 1944.]

THE PEOPLE, Respondent, v. SECUNDINO DORRANCE et al., Appellants.

Alfred J. Hennessy for Appellants.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

KNIGHT, J.—The appellants, Secundino Dorrance and Alonzo Dorrance, were found guilty by a jury of the crime of first degree robbery.

The victim of the robbery was Ernest Neil, a sailor of the United States Navy, stationed at Treasure Island; and the robbery was committed shortly before midnight on July 29, 1943, in the rear of a parking lot, a short distance from a saloon known as George's Cave, on Eddy Street between Leavenworth and Jones Streets, in San Francisco. Neil was knocked down by blows on the head inflicted with Coca Cola bottles, and then beaten with the bottles about the head so severely that he was confined in bed in a hospital for five days and required two blood transfusions. He suffered a severe gash on the head, a broken nose, and blackened eyes, and his fingers were smashed when he tried to protect himself by putting his hands on his head. While he was thus being beaten his wallet containing $40 was stolen from his back pocket.

Earlier that evening Neil visited the saloon with another sailor, and they picked up an acquaintanceship with two

women, Ila Hain, aged nineteen years, and a Mrs. Villela. The women were acquainted with appellants, and had met them earlier that day in a saloon near the waterfront, and tried to borrow some money from appellants. Appellants promised to meet them that evening at George's Cave and let them have the money. After the sailors met the women in George's Cave they drank with and talked to them for some time, and during that time the appellants were standing at the other end of the bar. The sailors asked the women to go to a room with them. One of the women said it would be all right, that she was going to get a quart of whiskey and take the sailors to a room. Both women went out, but Ila Hain returned alone in about fifteen minutes. The other woman had given Ila Hain a note saying for them to go to a hotel room and she would meet them there. Ila Hain told the sailors she had promised to buy appellants a drink, so they gave her a dollar and she went down to the other end of the bar and talked with appellants and gave them the dollar. Appellants asked her if Neil had any money, and she replied, "I guess so, he is buying my drinks." Thereupon appellants told her to get Neil outside and "we will take care of that." She and Neil left George's Cave about ten minutes to twelve, and were followed out by appellants. She led Neil through a parking lot to the back fence. There was a board off the fence, and as she started to go through the fence she pretended that she had caught her hair; whereupon appellants caught up with Neil and struck him on the head with the bottles. He fell to the ground and put his hands over his head and started moaning, but appellants continued to strike him. As soon as he was knocked to the ground Ila Hain ran to the corner, got in a cab and went home. She testified that she lured Neil away from George's Cave and through the parking lot so that appellants could take his money.

Ila Hain was arrested and charged jointly with appellants as a principal in the commission of the robbery. She was arrested on August 8th, and on August 11th gave a statement by way of question and answer to Police Inspector Reznik, which statement was taken down by a police stenographer. In that statement Ila Hain related the circumstances leading up to the commission of the robbery as above narrated and naming appellants as the persons who assaulted and robbed

Neil. At the time of the arraignment in September, 1943, appellants were represented by Attorney Hennessey, and the public defender appeared as counsel for Ila Hain. All three entered pleas of not guilty and the cause was set for trial on October 22, 1943. On the morning of the trial Ila Hain withdrew her former plea and entered a plea of guilty and asked for probation. The matter of probation was continued until November 15, and the trial proceeded as against appellants. Both appellants testified in their own behalf denying having committed the robbery, and they sought to establish an alibi, but this defense was rejected by the jury. Neil was not available as a witness at the time of trial because he was at sea, and the testimony given by him at the preliminary examination was read to the jury. Thereupon Ila Hain was called as a witness for the prosecution, and the testimony given by her followed closely the statement she had previously given the police.

The statement so made was afterwards received in evidence over appellants' objection, and the trial court's ruling is assigned as error. We find no reason to set aside the verdict on that ground. The transcribed statement was signed by Ila Hain on August 12th, before Police Inspector Butz, and shortly thereafter it was read to appellants by Inspector Butz in the presence of Ila Hain, and neither of appellants made any denial of the accusations made therein against them. Inspector Butz testified positively that both stood mute. Furthermore, prior to the time the statement was received in evidence appellants' counsel cross-examined Ila Hain as to the circumstances under which the statement was made; also as to some of the contents thereof; and during the cross-examination as to its contents the court reminded counsel that such examination was opening the way for the introduction of the statement in evidence. In any event, appellants could have suffered no prejudice by reason of the statement having been received in evidence because all of the facts and circumstances set forth therein were covered by the oral testimony given by the party making the statement, with full opportunity afforded the appellants to cross-examine.

On cross-examination of Ila Hain counsel for appellants asked her if while she was in jail awaiting trial and before she changed her plea she did not tell him that she was going to "stand on" the statement she had given to Inspector

Reznik because he had promised her probation. She denied having so told counsel, and thereafter counsel offered himself as a witness for the defense for the purpose of relating the conversation he claims took place with her at that interview; and the court ruled that whatever she may have said to him at that time was privileged. Under the facts as disclosed by the record the court's conclusion is doubtless supported by Wigmore on Evidence (3d ed., vol. 8, § 2304, p. 587) wherein the author states the rule to be that when the communication is made pending negotiations for retaining the attorney it is privileged, notwithstanding that the attorney's acceptance of the employment is eventually refused. Here, according to counsel's testimony, he went out to see Ila Hain because she had sent for him by phoning to his office, and that he went out to consult with her as an attorney—that it was not a social visit; that she told him that she did not want to be represented by the public defender "but wanted separate counsel"; that after going over the case with her he told her he could not represent her because the statement she had given to Inspector Reznik "conflicts" with his clients and "crossfires on them." He was then asked the direct question: ". . . If she had told you she would abandon this particular statement would you have represented her," and he replied, "I would." It is quite evident from the foregoing that whatever Ila Hain may have said to counsel leading up to his refusal to act as her attorney was privileged in that it was said pending negotiations for his employment as her attorney. None of the cases cited by appellants are in point. In the case of *People* v. *Heart*, 1 Cal.App. 166 [81 P. 1918], the interview in question was had by the attorney with the defendant's wife and not with the defendant, which took it out of the privileged communication rule.

Nor is there any merit in appellants' contention that the testimony given by Ila Hain was not sufficiently corroborated to meet the requirements of section 1111 of the Penal Code. As held in *People* v. *Negra*, 208 Cal. 64 [280 P. 354], while the corroborating evidence must do more than create a suspicion of guilt, it is nevertheless sufficient even though it "be slight and, when standing by itself, entitled to but little consideration." (*People* v. *McLean*, 84 Cal. 480 [24 P. 32].) And continuing, the court said: "The law does not require

that the evidence necessary to corroborate the testimony of an accomplice shall tend to establish the precise facts testified to by the accomplice; and strong corroborative testimony is not necessary to support a judgment of conviction founded on the testimony of an accomplice. Even though circumstantial and slight, the evidence is, nevertheless, sufficient if it tends to connect the accused with the commission of the offense. (*People* v. *Martin*, 19 Cal.App. 295 [125 P. 919].) . . . It is not necessary that the corroborating evidence should go so far as to establish by itself, and without the aid of the testimony of an accomplice, that the defendant committed the offense charged. (*People* v. *Solomon*, 6 Cal.Unrep. 305 [58 P. 55].)'' The more recent case of *People* v. *Davis*, 210 Cal. 540 [293 P. 32], holds substantially to the same effect. Furthermore, it has been held that such independent evidence may consist of contradictory statements made by the accused, or his silence in the face of accusatory statements, or of false statements made with respect to matters connected with the commission of the crime. (*People* v. *Taylor*, 70 Cal.App. 239 [232 P. 998].) ██ Here the evidence shows among other things that Neil got a ''good look'' at appellants as they were standing at the end of the bar in George's Cave, and his identification of them afterwards at police headquarters in the presence of Ensign Hunt as the persons who assaulted and robbed him, together with the testimony of the manager of George's Cave that when Ila Hain and Neil left the place the appellants followed immediately behind them, was legally sufficient to satisfy the requirements of the law. Moreover, the evidence shows that when appellants promised to meet the women at George's Cave that night, one of them stated that he ''wished he had a blackjack, there was a lot of money floating around there.''

The remaining points made by appellants are not supported by either argument or authority, and therefore under well settled rules they may be disregarded. (See 4 Cal.Jur. Ten-year Supp. p. 941.)

After an examination of the entire record including the evidence, we are satisfied that no reversible error has been shown, and that the verdict has not resulted in a miscarriage of justice. The judgments of conviction and the order denying the motion for new trial are affirmed.

Peters, P. J., and Ward, J., concurred.