[Crim. No. 4572.   In Bank.   Dec. 1, 1944.]

THE PEOPLE, Respondent, v. MAE A. WILSON, Appellant.

344

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, Frank Richards and T. G. Negrich, Deputies Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

TRAYNOR, J.—Defendant appeals from a judgment convicting her of the crime of abortion and from an order denying her motion for a new trial. The prosecuting witness, Mrs. Marcella Anderson, gave the following testimony: On August 2, 1943, defendant performed an illegal operation on her. She made the appointment for the operation with defendant over the telephone, and defendant asked her how many periods she had missed and stated that the fee would be $100. She went to defendant's office with her husband. Defendant inquired whether they had the money and received an affirmative answer. She then told the husband to wait outside the office because her patients were women. After her husband left, Mrs. Anderson paid defendant the $100 and asked defendant what method she used. Defendant replied that it was a curettement. During the operation, which took about 35 minutes, the witness lay on a table while defendant worked

between her legs, and she could not see whether defendant used an instrument. She felt something inserted into her vagina, however, and also felt a painful scraping and pulling inside her body. She heard metallic sounds, caused by the different things that she had felt inside her body, as they were laid on the table and picked up again. She felt well when she went to defendant but very weak when she met her husband in the building after leaving defendant's office. When she reached home she went to bed with a fever and in great pain. During the second night following the operation she was brought to a hospital. Her husband's testimony was substantially the same with respect to the interview with defendant before he left defendant's office to wait for his wife and with respect to his wife's health before and after her stay in defendant's office. He testified that he reassured defendant that the money was at hand when she inquired about the money and that he asked defendant how long it would take and was advised by her that she could not tell; that it might be thirty minutes or three hours. His testimony differed from that of his wife as to the date she entered the hospital. He stated that it was the night of August 7th to August 8th. Dr. Malone, the physician who attended Mrs. Anderson during her twelve days in the hospital, testified that he examined her after her arrival in the hospital on the morning of August 4th, that she was running a temperature, that her uterus was enlarged, that he found a body remaining therein, and that the cervix was effaced. He stated that this effacement indicated that the patient was about to lose the pregnancy conception in her uterus. He further testified that it was his opinion, based on his observations and the case history obtained from Mrs. Anderson when she was under his care that an abortion was induced by outside interference while she was in a stage of pregnancy of about two and a half or three months, and that the abortion was inevitable. Defendant, testifying in her own behalf, denied that she performed an abortion, claiming that she merely examined Mrs. Anderson but could not complete the examination and was therefore unable to discern whether Mrs. Anderson was pregnant. She testified that she charged $10 for the examination but that she did not keep written records, and she was unable to produce a written record of the fee.

Defendant contends that there was not sufficient evidence that an abortion was committed or that it was performed by

the use of an instrument. If the verdict can legally be based on the testimony of the three witnesses, it is clearly supported by the evidence. Defendant contends, however, that the testimony of Mrs. Anderson and her husband was not sufficiently corroborated and that part of Dr. Malone's testimony was inadmissible.

Mrs. Anderson's testimony required corroboration under section 1108 of the Penal Code, which provides that the testimony of the woman upon whom an abortion has been performed must be corroborated by other evidence. Mr. Anderson's testimony required corroboration if he was an accomplice of defendant. (Pen. Code, § 1111.) The mere fact that he accompanied his wife to defendant's office does not make him an accomplice. (*People* v. *Balkwell,* 143 Cal. 259, 261 [76 P. 1017] ; *People* v. *Brewer,* 19 Cal.App. 742, 746 [127 P. 808] ; *People* v. *Seiffert,* 81 Cal.App. 195, 198 [253 P. 189].) Mr. Anderson, however, also provided the $100 fee for the abortion and had a conversation with defendant in which he assured her that the money was ready and inquired of her how long he would have to wait, thus showing his intention to facilitate the commission of the crime by being at hand to take his wife home. He stated that he knew the purpose of his wife's appointment with defendant was an abortion. When he was asked whether he took his wife to defendant's office for the purpose of an abortion he answered that "that was more or less up to her." This evidence shows that he played an active part in the transaction and was therefore subject to prosecution for the offense with which defendant was charged (Pen. Code, § 31; *People* v. *Shaw,* 17 Cal.2d 778, 799 [112 P.2d 241]), and was therefore an accomplice within the definition of section 1111 of the Penal Code. (*People* v. *Clapp,* 24 Cal.2d 835, 838 [151 P.2d 237].)

Mr. and Mrs. Anderson could corroborate each other's testimony. Mrs. Anderson, as the woman on whom the crime of abortion was committed was subject to prosecution, not under section 274 of the Penal Code prescribing punishment for abortion, but only under section 275 of the Penal Code, and was therefore not an accomplice of defendant or the husband, who were subject to prosecution under section 274. (*People* v. *Clapp, supra.*) The wife's testimony adequately corroborated that of her husband. His testimony was also sufficient to corroborate hers even if it be assumed that the corroborating evidence required by section 1108 must,

like that required by section 1111 with respect to accomplices, tend to connect the defendant with the offense. ▮ So long as corroborating evidence creates more than a suspicion of guilt, it is sufficient even though it "be slight and, when standing by itself, entitled to but little consideration." (*People* v. *Negra,* 208 Cal. 64, 69 [280 P. 354]; *People* v. *Dorrance,* 65 Cal.App.2d 125, 130 [150 P.2d 10]; *People* v. *Shaw, supra,* at p. 802.) ▮ It may consist of testimony of the defendant and inferences therefrom as well as inferences from the circumstances surrounding the criminal transaction (*People* v. *Negra, supra; People* v. *Garner,* 60 Cal.App.2d 63 [140 P.2d 146]; *People* v. *Dorrance, supra; Commonwealth* v. *Follansbee,* 155 Mass. 274 [29 N.E. 471]; *Commonwealth* v. *Fenno,* 134 Mass. 217; see 1 C.J.S. 338), and it need not establish the precise facts testified to by the witness whose testimony it supports. (*People* v. *Negra, supra; People* v. *Lee,* 81 Cal.App. 49, 53 [252 P. 763]; *People* v. *Dorrance, supra.*) ▮ Mr. Anderson's conversation with defendant, and the latter's inquiry about the money and her statement that he might have to wait thirty minutes or three hours indicate something more serious than a routine examination. His observation that his wife was well when she entered defendant's office but ill when she left lends support to the inference that defendant brought about this change in Mrs. Anderson's condition. ▮ Further inferences connecting defendant with the abortion, which, according to the expert opinion of Dr. Malone, had occurred, could justifiedly be drawn from defendant's failure to keep written records. ▮ Mrs. Anderson's testimony as to the use of instruments does not need special corroboration. (*People* v. *Smitherman,* 58 Cal.App.2d 121, 123 [135 P.2d 674]; *People* v. *Lorraine,* 28 Cal.App.2d 50, 53 [81 P.2d 1004]; *People* v. *Thompson,* 16 Cal.App. 748, 750 [117 P. 1033].)

Defendant contends that the following opinion evidence was improperly elicited from Dr. Malone: "Q. From your examination of this case, this patient, Mrs. Anderson, and from the case history that you took, did you form an opinion as to whether her abortion was spontaneous or induced? A. It was my opinion that the abortion was induced. . . . Q. Doctor, assuming for the purpose of this case that an abortion is performed on Mrs. Anderson on August 2nd, 1943, and that you examined her within a few days after it happened, on August 4th, 1943, and assuming further, Doctor, that an abortion had

been performed on Mrs. Anderson for the purpose of preserving her life, would the conditions requiring that abortion be observable on August 4th? . . . A. At the time I examined the patient, Mrs. Anderson, I found no evidence that a therapeutic abortion was necessary. Q. . . . Then, in your opinion, Doctor, you would say that from your examination of Mrs. Anderson, the abortion was not performed in order to preserve her life, is that correct? A. That is correct.'' Defendant attacks the admission of this testimony on the grounds that the questions called for answers based in part on the case history, namely, declarations of the patient, rather than on the observations of the physician, that they allowed the expert to make a determination that it was the sole province of the jury to make, and that the facts assumed were not proved.

The fact that Dr. Malone's opinion was partly based on the case history obtained from Mrs. Anderson does not make it inadmissible. It is settled that a physician may take into consideration a patient's declarations as to his condition, if they are necessary to enable him in connection with his own observations to form an opinion as to the patient's past or present physical or mental condition. (*People* v. *Shattuck,* 109 Cal. 673, 678 [42 P. 315]; *Groat* v. *Walkup Drayage etc. Co.,* 14 Cal.App.2d 350, 357 [58 P.2d 200]; *Willoughby* v. *Zylstra,* 5 Cal.App.2d 297, 300 [42 P.2d 685]; *Tierney* v. *Charles Nelson Co.,* 19 Cal.App.2d 34, 37 [64 P.2d 1150]; see 6 Wigmore, Evidence (3d ed.) § 1722(c); 67 A.L.R. 10; 80 A.L.R. 1527; 130 A.L.R. 977.)

The method of obtaining opinion evidence from an expert by hypothetical questions is unsatisfactory (see 2 Wigmore, Evidence (3d ed.) § 686; Hulbert, *Psychiatric Testimony in Probate Proceedings,* 2 Law and Contemporary Problems, 548, 554), but it is at present the least objectionable known to the law. (*People* v. *Le Doux,* 155 Cal. 535, 554 [102 P. 517].)

The trial court, however, should prevent the use of misleading or unfair hypothetical questions, permitting only questions that sufficiently specify the assumptions on which they are based and contain only such assumptions as do not contradict the weight of the evidence in the case. (*Christiansen* v. *Hollings,* 44 Cal.App.2d 332, 348 [112 P.2d 723]; *Weaver* v. *Shell Co.,* 34 Cal.App.2d 713 [94 P.2d 364]; *Bickford* v. *Lawson,* 27 Cal.App.2d 416, 426 [81 P.2d 216]; *Graves* v. *Union Oil Co.,* 36 Cal.App. 766, 770 [173 P. 618]; *Estate of Gould,*

188 Cal. 353, 356 [205 P. 457].) ▇▇▇ While each hypothesis contained in the question should have some evidence to support it, it is not necessary that the question include a statement of all the evidence in the case. The statement may assume facts within the limits of the evidence, not unfairly assembled, upon which the opinion of the expert is required, and considerable latitude must be allowed in the choice of facts as to the basis upon which to frame a hypothetical question. (*Treadwell* v. *Nickel,* 194 Cal. 243, 267 [228 P. 25] ; *Forbis* v. *Holzman,* 5 Cal.2d 407, 410 [55 P.2d 201] ; *Mirich* v. *Balsinger,* 53 Cal.App.2d 103, 117 [127 P.2d 639] ; *Christiansen* v. *Hollings, supra.*) All facts assumed in prosecuting counsel's questions in the present case were sustained by the evidence except the assumed fact that the abortion was performed for the preservation of Mrs. Anderson's life. This fact, however, if true, would have been favorable to defendant.

▇▇▇ There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. "We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in." (*Hamilton* v. *United States,* 73 F.2d 357, 358-9; *Rackoff* v. *United States,* 78 F.2d 671, 673; see, also, *Nolan* v. *Nolan,* 155 Cal. 476, 480 [101 P. 520, 132 Am.St.Rep. 99, 17 Ann.Cas. 1066] ; *Giraudi* v. *Electric Imp. Co.,* 107 Cal. 120, 127 [40 P. 108, 48 Am.St.Rep. 114, 28 L.R.A. 596] ; *Sim* v. *Weeks,* 7 Cal. App.2d 28, 39 [45 P.2d 350] ; *Hurwit* v. *Prudential Ins. Co.,* 45 Cal.App.2d 74, 82 [113 P.2d 691] ; 78 A.L.R. 755 ; 4 Wigmore Evidence (3d ed.) § 1921; 7 N.C.L.Rev. 320.) In the present case there was no other practicable way of framing the questions if they were to serve the purpose of obtaining the benefit of the witness's expert knowledge as to matters on which enlightenment of the jury by the expert was proper. (Code Civ. Proc., § 1870(9) ; *Moore* v. *Norwood,* 41 Cal.App.2d 359, 366 [106 P.2d 939] ; *Engelking* v. *Carlson,* 13 Cal.2d 216, 221 [88 P.2d 695] ; *Patterson* v. *Marcus,* 203 Cal.

550, 553 [265 P. 222]; *Perkins* v. *Trueblood*, 180 Cal. 437, 443 [181 P. 642].)

Defendant contends that prejudicial error was committed by the trial court in denying defendant's motion to strike testimony of Maynard Young, an investigator for the State Medical Board, on the ground that evidence of another crime was inadmissible. The witness was asked by counsel for the People whether he had a conversation with defendant when he arrested her in her office. He testified that while arresting her he asked defendant where the instruments were that she used in curettements, and that she replied that those instruments had never been returned to her after they had been taken from her at the time of a previous arrest. Defendant's statement to the arresting officer, however, was admissible, not for the purpose of proving a former arrest of defendant, but to rebut the inference that no instruments were used, which could be drawn from the fact that the arresting officers at the time of the arrest were unable to find in defendant's office instruments that are regularly used for abortions of the type in question. The jury could infer from the fact that such instruments had been taken from defendant at a previous arrest that she would be careful not to keep new instruments in her office, or that she might have performed the abortion with instruments other than those regularly used. The latter inference finds support in defendant's inability to complete the abortion. The importance of this evidence in the proof of the People's case outweighed any prejudice to the defendant from the reference to her former arrest. (*Adkins* v. *Brett*, 184 Cal. 252, 258 [193 P. 251].) Defendant was entitled, however, to have the jury instructed as to the limited purpose for which the evidence was admitted (*Adkins* v. *Brett, supra*, at p. 259), but she does not contend that she requested such an instruction and that it was denied.

Defendant contends that her constitutional privilege against self-incrimination was violated on the ground that the questions admitted on her cross-examination with respect to the telephone conversation preceding the appointment, the keeping of records by defendant, and her questioning Mrs. Anderson about the missing of periods, were outside the scope of allowable cross-examination. A defendant may be cross-examined under section 1323 of the Penal Code "as to all matters about which he was examined in chief." Here, defendant was examined by her counsel as to what happened

when Mrs. Anderson was in defendant's office and what fee defendant charged for the alleged examination. This direct examination opened the door to inquiry as to preparatory steps concerning the appointment and other facts and circumstances surrounding the transaction, including the failure to enter the alleged fee in a record as is customary. (*Ashley* v. *Rivera*, 220 Cal. 75, 79 [29 P.2d 199]; *People* v. *Kynette*, 15 Cal.2d 731, 753 [104 P.2d 794]; *People* v. *Smith*, 43 Cal.App. 2d. 110, 116 [110 P.2d 472].)

▬ Defendant contends that there was no evidence at the preliminary hearing of reasonable or probable cause, as required by section 995 of the Penal Code, and that therefore her motion to set aside the information was improperly denied. Defendant has failed to point out in what respect the proof at that time was insufficient to show reasonable or probable cause. (See *People* v. *Novell*, 54 Cal.App.2d 621, 623 [129 P.2d 453].) If error was committed, it was not prejudicial, for the proof submitted at the trial was sufficient, not only to show reasonable and probable cause, but to support the verdict.

The judgment and order are affirmed.

Gibson, C. J., Shenk, J., Curtis, J., and Edmonds, J., concurred.

SCHAUER, J.—I dissent. By the testimony of Mrs. Anderson she was not merely an innocent victim upon whom an abortion was attempted without her knowledge or consent; she was on the contrary an active participant, wilfully aiding and abetting in the project. Therefore she was guilty as a principal and as an accomplice of the defendant in violating section 274 of the Penal Code, if in fact any crime was proved, and not section 275. The latter section (275) is obviously designed primarily, if not exclusively, to cover situations not covered by the former. The latter section is intended to punish two things: (1) the solicitation and taking of drugs by a woman, on her own account and without the necessity for participation by any other person, "with intent thereby to procure a miscarriage"; (2) the *passive submission,* with like intent, to an operation. It does not cover active participation in the violation of section 274. That section (274), coupled with the provisions of sections 31 and 971 of the same code, covers the activities of both Mr. and Mrs. Anderson and the defendant. They are all accomplices and all principals in a single crime.

The experience and wisdom of mankind, particularly of those dealing with judicial trials, accumulated through many generations, have brought the conclusion that "evidence of an accomplice, coming from a tainted source, the witness being, first, an infamous man, from his own confession of guilt, and, second, a man usually testifying in the hope of favor or the expectation of immunity, was not entitled to the same consideration as the evidence of a clean man." (*People* v. *Coffey* (1911), 161 Cal. 433, 438 [119 P. 901, 39 L.R.A.N.S. 704].) In recognition of this conclusion the Legislature of California has laid down the rule that "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Pen. Code, § 1111.)

The majority opinion here, as in *People* v. *Clapp* (1944), 24 Cal.2d 835 [151 P.2d 237], ascribes to section 275 a potency which I do not believe is justified by that section's language or purpose. Such construction appears to me to subvert the clear meaning of sections 274, 31, and 971 of the Penal Code, and to accomplish the circumvention of the salutary provisions of section 1111. Such strained constructions benefit neither law nor justice. The Legislature gave further evidence of its concern that there be no convictions in abortion cases upon tainted evidence alone—which may be wholly false and given for ulterior purposes—by the enactment of section 1108 of the Penal Code. If that section and section 1111 were given effect in this case the judgment could not stand. Regardless of our feeling as to the likelihood of guilt of the defendant in this or any other particular case it is our duty to scrupulously uphold the law as enacted by the State.

For the reasons above stated and for the additional considerations depicted in my dissenting opinion in *People* v. *Clapp* (1944), *supra,* 24 Cal.2d 840, the judgment should be reversed.

Carter, J., concurred.

Appellant's petition for a rehearing was denied December 28, 1944. Carter, J., and Schauer, J., voted for a rehearing.