[Crim. No. 4072.    Second Dist., Div. One.    Apr. 18, 1947.]

THE PEOPLE, Respondent, v. THEODORE EMERY et al.,
Defendants; DR. SAMUEL D. COLLINS, Appellant.

George Stahlman for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

YORK, P. J.—The defendants were jointly charged in an information filed by the district attorney of Los Angeles County with the crime of abortion and were tried separately. Defendant Collins was also charged with a prior conviction of a similar crime which he admitted.

From a judgment based on the verdict of the jury finding him guilty as charged in the information, and from an order denying his motion for a new trial, defendant Collins prosecutes this appeal, contending that the verdict is contrary to the law and the evidence, and that the evidence is insufficient to sustain the verdict and the judgment.

Two witnesses only testified at the trial, the prosecutrix and defendant Emery, the latter having theretofore been convicted of abortion. The prosecutrix testified that she met Emery in Nicaragua, where they cohabited as husband and wife; that she came to Pasadena, California, on June 6, 1944, met said Emery and continued the relationship; that she was living with him in December, 1944, which was the last time she menstruated; that in April, 1945, she was pregnant and in good health; that in said month of April, Emery took her to appellant Collins' home "so I would be operated on"; that Emery introduced himself and "Dr. Collins asked Emery who told him that he did this kind of operation, and Emery mentioned some name . . . and the Doctor asked him if he knew how much the operation would cost, and he said '$200.00.' And Emery said, 'Yes, $200.00,' and he gave him the $200.00. . . . Emery told him to be very careful when he operated on me, because other doctors had refused to do the operation." That appellant conducted them to the second floor of his home, where prosecutrix disrobed and was placed on an operating table with her legs spread and raised, whereupon appellant using certain instruments inserted in the private parts of prosecutrix a red rubber tube and "a wad of cotton," with instructions to remove the same within 24 hours; that about a week later, prosecutrix believing that "the child was dead," returned with Emery to appellant's

office and was placed on an operating table with her ankles in stirrups, at which time appellant inserted a speculum and "started the operation. . . . He was using something like a pair of scissors. . . . The pain was very severe and I feel like there is something cutting"; that while appellant was performing the operation, Emery put his hand over her mouth to keep her from screaming; that thereafter she observed "little pieces in the pan that looked like flesh"; that subsequently she took some medicine which Mrs. Collins had given to Emery and after a few days "the child came." In answer to the question, "Did you freely and voluntarily have that operation done?," the prosecutrix stated: "No." This witness also testified that she did not see appellant again until the day of the preliminary hearing in the instant cause, at which time he said to her: "Do you want to send me to jail? Shame on you." And she answered: "You not only killed my son, you also killed me, too."

Defendant Emery testified that he and prosecutrix cohabited as husband and wife in Nicaragua and also in California; that in April of 1945, he and prosecutrix went to appellant's office "for an operation for abortion"; that "I introduced myself, said there had been an appointment made, and he seemed to know who I was." The trial court asked the witness: "Were you informed by her that she was pregnant?," to which he answered "Yes," over the objection of appellant's counsel that the question called "for a conclusion of the witness and hearsay." Said witness further testified that he paid appellant $200 and that he accompanied appellant and prosecutrix to a room on the second floor containing "tables, operating table, instruments and so forth," where prosecutrix disrobed and was placed on an operating table with her legs raised in stirrups and a speculum inserted in her private parts; that his back was to appellant and he did not see what he did; that prosecutrix was making a lot of noise and he was trying to keep her quiet; that appellant told him "if she did not start flowing within a week to call him or come back over"; that some time later he took the prosecutrix back to appellant's office, where she was placed on the operating table in the same position as before, but that he did not watch the operation because he was trying to keep the prosecutrix quiet; that prior to these two visits to appellant, the witness had taken prosecutrix to three other doctors.

It was stipulated by counsel that "If Thad Brown, a Los Angeles police officer, were called as a witness he would

testify that in August, 1945, the instruments that have been introduced in evidence, the speculum and the catheter, and the instrument for holding cotton, were obtained from Dr. Collins' office in August, 1945, and that the photographs introduced in evidence were taken in Dr. Collins' office.''

Appellant was prosecuted under section 274 of the Penal Code, to wit: ''Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years.''

It is here contended that (a) the evidence is insufficient to sustain a verdict convicting appellant of abortion; (b) the evidence fails to show that an operation was not necessary to preserve the life of the prosecutrix; (c) the required criminal intent was not proved; (d) the prosecutrix was not adequately corroborated; (e) the court erred in admitting evidence over appellant's objection.

As hereinbefore stated, other than the prosecutrix only one witness testified at the trial herein: the defendant Emery, an accomplice of appellant and who was also convicted of the crime of abortion; therefore, the question of corroboration becomes material, because section 1108 of the Penal Code specifically provides that a defendant on trial for procuring an abortion ''cannot be convicted upon the testimony of the woman upon . . . whom the offense was committed unless she is corroborated by other evidence.'' However, under the rule enunciated in the cases of *People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720], and *People* v. *Clapp*, 24 Cal.2d 835 [151 P.2d 237], prosecutrix' testimony was subject to corroboration by the evidence of defendant Emery.

In the Clapp case it was held that the person submitting to an abortion, being subject to prosecution under Penal Code, section 275, is not an accomplice of the person performing the operation within Penal Code, section 1111, as amended in 1915, and her testimony, although it must be corroborated under section 1108 of the Penal Code, may be corroborated by testimony of an accomplice. The court there stated (p. 839): ''The requirement of corroboration under section 1108 of the Penal Code relates to the testimony of any woman on whom an abortion was performed, whether she voluntarily

submitted to the operation or was induced to do so by force or fraud. The section is designed to protect the defendant against possible injustice where his statement and that of the woman conflict. (See 7 Wigmore, Evidence (1940), § 2061, p. 346.) Since this section has no bearing on the question whether the woman is an accomplice, its requirement of corroborating testimony cannot be construed as excluding the testimony of an accomplice for the corroboration of the woman's testimony.''

In *People* v. *Wilson, supra,* it was contended that the testimony of Mrs. Anderson, the prosecutrix, and her husband, who accompanied her to the doctor's office and played an active part in the transaction, was not sufficiently corroborated. The court there held (p. 346): ''Mr. and Mrs. Anderson could corroborate each other's testimony. Mrs. Anderson, as the woman on whom the crime of abortion was committed was subject to prosecution, not under section 274 of the Penal Code prescribing punishment for abortion, but only under section 275 of the Penal Code, and was therefore not an accomplice of defendant or the husband, who were subject to prosecution under section 274. (*People* v. *Clapp, supra.*) The wife's testimony adequately corroborated that of her husband. His testimony was also sufficient to corroborate hers even if it be assumed that the corroborating evidence required by section 1108 must, like that required by section 1111 with respect to accomplices, tend to connect the defendant with the offense. So long as corroborating evidence creates more than a suspicion of guilt, it is sufficient even though it 'be slight and, when standing by itself, entitled to but little consideration.' (*People* v. *Negra,* 208 Cal. 64, 69 [280 P. 354]; *People* v. *Dorrance,* 65 Cal.App.2d 125, 130 [150 P.2d 10]; *People* v. *Shaw, supra,* (17 Cal.2d 778 [112 P.2d 241] at p. 802.) It may consist of testimony of the defendant and inferences therefrom as well as inferences from the circumstances surrounding the criminal transaction (*People* v. *Negra, supra; People* v. *Garner,* 60 Cal.App.2d 63 [140 P.2d 146]; *People* v. *Dorrance, supra; Commonwealth* v. *Follansbee,* 155 Mass. 274 [29 N.E. 471]; *Commonwealth* v. *Fenno,* 134 Mass. 217; see 1 C.J.S. 338), and it need not establish the precise facts testified to by the witness whose testimony it supports. (*People* v. *Negra, supra; People* v. *Lee,* 81 Cal.App. 49, 53 [25 P. 763]; *People* v. *Dorrance, supra.*) . . . Mrs. Anderson's testimony as to the use of in-

struments does not need special corroboration. (*People* v. *Smitherman,* 58 Cal.App.2d 121, 123 [135 P.2d 674]; *People* v. *Lorraine,* 28 Cal.App.2d 50, 53 [81 P.2d 1004]; *People* v. *Thompson,* 16 Cal.App. 748, 750 [117 P. 1033].)''

Applying the foregoing principles to the evidence hereinbefore recited, there was sufficient corroboration of the testimony of prosecutrix by the defendant Emery to connect appellant with the offense charged against him.

█ In connection with his first point, appellant submits that it is not shown by the evidence that the prosecutrix was pregnant when she called at his office.

In *Rinker* v. *State Board of Medical Examiners,* 59 Cal. App.2d 222, 224 [138 P.2d 403], the court analyzed the 1935 amendment to section 274 of the Penal Code which deleted therefrom the word ''pregnant'' and held that: ''After the adoption of the amendment proof of pregnancy was not required to establish guilt of the crime commonly called abortion. Such has been the ruling in a number of jurisdictions where the statutes are similar to the present statute in California. (*State* v. *Russell* (1916), 90 Wash. 474 [156 P. 565]; *People* v. *Axelsen* (1918), 223 N.Y. 650 [119 N.E. 708]; *Commonwealth* v. *Tibbetts* (1893), 157 Mass. 519 [32 N.E. 910].)''

In the instant case, however, prosecutrix testified directly that she was pregnant at the time she visited appellant, and her statements in that regard were corroborated by defendant Emery who stated that he and prosecutrix went to appellant's office ''for an operation for abortion''; that he paid appellant $200 for such operation but was not given a receipt therefor; that prosecutrix disrobed and was placed on an operating table by appellant, who then proceeded with the operating, using various instruments, while said witness attempted to keep prosecutrix quiet. This evidence was amply sufficient to raise an inference that prosecutrix was pregnant at the time in question.

█ Appellant urges that the evidence fails to show that an operation was not necessary to preserve the life of the prosecutrix. Prosecutrix testified that when she called on appellant in April of 1945, she was pregnant and that her ''health was very good,'' and the record herein discloses no evidence controverting this fact. In *People* v. *Knowles,* 7 Cal.App.2d 398, 401 [46 P.2d 788], where the same contention was made, the court stated: ''Appellant next contends

that the evidence does not show that the operation was not necessary to preserve life. As above stated, the deceased was in normal health except for a pregnant condition. Assuming that the burden was on the prosecution to show that the operation was not necessary to preserve life, the proof upon this point was amply sufficient to show that the operation was resorted to for no such benign purpose. (*People* v. *Brewer,* 19 Cal.App. 742 [127 P. 808].)''

In passing upon the same question, the court in *People* v. *Brewer, supra,* at page 746, stated: ''There is no merit in this contention. It is not at all clear that the proof of such matter devolves upon the people. (Underhill on Criminal Evidence, 347; *People* v. *Balkwell,* 143 Cal. 259 [76 P. 1017].) But conceding, for the purpose of this opinion only, that the fact must be established by the people, the proof upon this point was ample. The evidence shows that Mrs. Enrick was thirty-nine years of age and was the mother of three children; that she went to the residence of the defendant in Berkeley from her residence in East Oakland, and at that time was apparently in perfect health except for the usual symptoms of pregnancy. There being not a word in the evidence to the contrary, this was ample to support the negative proposition that the operation was not necessary to preserve life. It is a matter of common knowledge that it is the rare exception that such an operation is necessary to preserve life, and all the circumstances surrounding and attending the operation performed in this case show without doubt that it was resorted to for no such benign purpose.'' Likewise here, the evidence is sufficient to support the negative proposition that the operation was not necessary to preserve the life of prosecutrix.

Appellant contends that the required criminal intent was not proved. Intent is a question of fact which may be proved like any other fact ''by acts, conduct and circumstances connected with the offense.'' (*People* v. *Fewkes,* 214 Cal. 142, 148 [4 P.2d 538]. See, also, *People* v. *Richardson,* 161 Cal. 552 [120 P. 20]; *People* v. *Browning,* 132 Cal.App. 136 [22 P.2d 784].)

The facts established at the trial herein amply support the implied finding of the jury that appellant used an instrument upon prosecutrix with the intention of procuring a miscarriage. Therefore, the judgment is sufficiently supported by the evidence.

Appellant's final contention is that the trial court erred in the admission of certain testimony given by defendant

Emery of a declaration by the prosecutrix that she was pregnant. The basis for this contention is that pregnancy is an essential element to be proven by the prosecution and that the evidence objected to was hearsay and prejudicial in assisting to establish pregnancy. While the statement was doubtless hearsay and inadmissible as such, it was not of such a prejudicial character as to warrant a reversal, for the reason that the pregnant condition of prosecutrix was established by other competent evidence.

Since the evidence sustains the jury's verdict of appellant's guilt beyond a reasonable doubt and no prejudicial error appears in the record, the judgment must be sustained.

The judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1947. Carter, J., and Schauer, J., voted for a hearing.