EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRAN-
CISCO LUCIANO PEÑA, acusado y apelante.

Número 15245.

*Sometido:* 1 de octubre de 1953.   *Resuelto:* 14 de diciembre de 1954.

*Rafael Atiles Moréu,* abogado del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo y Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 25 de mayo de 1950, el señor Fiscal de la Corte de Distrito de Ponce, presentó una acusación por un delito de mutilación, contra el acusado señor Francisco Luciano Peña, cometido de la manera siguiente: "porque el referido acusado Francisco Luciano Peña, allá en o por uno de los días del mes de marzo de 1950, y en el término municipal de Ponce, Puerto Rico, que forma parte del Distrito Judicial de Ponce, Puerto Rico, voluntaria, ilegal, y maliciosamente, y con intención de causarle grave daño corporal, acometió y agredió con un machete al señor Bernabé Torres, infiriéndole una herida incisa en la región palmar de la mano izquierda, a consecuencia de la cual ha quedado permanentemente mutilado de la referida mano izquierda, dicho señor Bernabé Torres."

El día 13 de junio de 1950 se le leyó la acusación al acusado, quien al comparecer asistido de su abogado, al acto de la lectura de la acusación, hizo alegación de inocente y solicitó juicio por jurado. El día 6 de julio de 1950, la causa criminal se ventiló ante un Tribunal de derecho, por haber renunciado el acusado al juicio por jurado. Después de la correspondiente vista, el acusado fué declarado culpable de un delito de mutilación. A petición del abogado del acusado, el ilustrado juez sentenciador se reservó el pronunciamiento de la

sentencia, y ordenó al Oficial Probatorio rendir un informe sobre la deseabilidad de suspender la sentencia que le correspondería al acusado. Parece que el Oficial Probatorio no rindió su informe hasta el 8 de junio de 1951.

El día 15 de agosto de 1951, el ilustrado juez sentenciador dictó sentencia condenando al acusado a cumplir una pena de uno a cinco años de presidio, y por lo tanto, denegando la solicitud de libertad a prueba. El acusado y apelante no estuvo conforme con la sentencia dictada, y apeló ante nos, señalando los siguientes errores:

*"Primer error:* cometió error el tribunal *a quo,* y manifiesto abuso de discreción al denegarle la probatoria, a un menor de edad—no tenía 17 años el día de la vista—, cuando ya dicho menor había cumplido año y medio recluído en sumaria en la Cárcel de Distrito de Ponce, carecía de récord penal, y el Tribunal no hizo gestión alguna para determinar la verdadera edad del menor, para la fecha de la comisión del delito habiendo la fuerte probabilidad de que no tuviera los 16 años de edad cumplidos, para la fecha de la comisión del delito.

*"Segundo error:* cometió el tribunal *a quo* error, y manifiesto abuso de discreción al denegarle la probatoria al acusado, después de celebrado el juicio, sin dictarle sentencia, habiendo desde que se celebró el juicio, y se dictó sentencia, transcurrido un año y un mes, o sea más del mínimum de la sentencia impuesta, que fué de 1 a 5 años de presidio, teniendo derecho, bajo ese estado de cosas a que se le hubiera suspendido la sentencia, por haber cumplido en sumaria el mínimum de la misma.

*"Tercer error:* cometió el tribunal *a quo* manifiesto error de derecho al asumir jurisdicción sobre el acusado sin probarse que éste tuviera 16 años de edad cumplidos, para la fecha de la comisión del delito.

*"Cuarto error:* cometió manifiesto error el tribunal *a quo,* en la apreciación de la prueba, al concluir que hubo mutilación cuando el médico que certificó en corte, no era tal, y cuando tampoco demostró que el perjudicado hubiera quedado mutilado.

*"Quinto error:* cometió error el tribunal *a quo* al dar al acusado por renunciado su juicio por jurado, cuando no renunció inteligentemente al mismo.

*"Sexto error:* cometió error el tribunal *a quo* al sentenciar al acusado cuando no estuvo debidamente representado por abogado."

En cuanto al primer error, respecto al posible abuso de discreción cometido por el ilustrado Juez sentenciador, al negarle la libertad a prueba a un menor de 17 años, aunque mayor de 16 años de edad, quien había cumplido a la fecha de la imposición de la pena, año y medio recluído en sumaria en la Cárcel de Distrito de Ponce, y carecía de antecedentes penales, la Ley aplicable es el art. 2 de la Ley núm. 259 de 3 de abril de 1946 ((1) pág. 535), según quedó enmendado por la Ley núm. 177 de 4 de mayo de 1949 ((1) pág. 577) que dispone: "las Cortes de Distrito, podrán suspender los efectos de la sentencia que se dicte en todo caso de delito grave que no sea asesinato, robo, incesto, extorsión, violación, crimen contra natura, hurto o escalamiento, y ordenarán que la persona sentenciada quede en libertad a prueba siempre que, al tiempo de imponer dicha sentencia, *concurran todos los requisitos* que a continuación se enumeran: (1) que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no haya sido convicta, sentenciada y recluída en prisión por delito alguno con anterioridad a la comisión del delito por el cual está siendo procesada; y a quien no se haya suspendido los efectos de una sentencia anterior por delito grave; (2) que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo, un problema de conducta o de carácter, para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico; (3) que el juez sentenciador tenga ante sí *un informe que le haya sido rendido por un Oficial Probatorio* después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historia social de la persona sentenciada, y que, *del contenido de ese informe, pueda dicho juez sentenciador* concluir, que ningún aspecto de la vida de esa persona evi-

dencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad; disponiéndose, que la corte sentenciadora podrá, a su discreción, además de poner a prueba a la persona sentenciada, imponer una multa cuya cuantía quedará a discreción del tribunal; disponiéndose, además, que la persona puesta a prueba podrá ser requerida para que, mientras estuviere en libertad a prueba, resarza a la parte perjudicada de los daños que le hubiere ocasionado o para que asuma la obligación de corregir el mal causado por su acto delictivo. Disponiéndose además, que una vez puesta a prueba, la persona quedará bajo la custodia legal de la Corte y sujeta a la supervisión de la Junta de Libertad Condicional hasta la expiración del período máximo de su sentencia."

Estamos conformes con la representación del acusado y apelante, que la carencia de antecedentes penales, es una circunstancia favorable para suspender una sentencia. Pero estamos asimismo conformes con el señor Fiscal de este Tribunal, que la circunstancia de no tener antecedentes penales, por sí sola, no es suficiente para que un convicto obtenga la libertad a prueba: *Pueblo* v. *Feliciano*, 67 D.P.R. 247, (Travieso), (1947), cita precisa a la pág. 249. En cuanto al extremo de que dicho acusado había cumplido año y medio recluído en sumaria en la Cárcel de Distrito de Ponce, es conveniente recordar, que además el acusado había sido condenado a seis meses de cárcel por el correspondiente delito de portar arma, con la cual cometió la mutilación que se le imputa, y que para dicho delito no hay suspensión de sentencia.

■■ El juez sentenciador tenía que imponerle al acusado una sentencia indeterminada, de acuerdo con los arts. 1 y 2 de la Ley núm. 295 de 10 de abril de 1946 ((1) pág. 759), según quedaron enmendados por la Ley núm. 176 de 4 de mayo de 1949 ((1) pág. 553), independientemente del hecho de haber considerado la posibilidad de extenderle al acu-

sado el beneficio de la libertad a prueba; *Pueblo* v. *Rodríguez*, 69 D.P.R. 546, (Todd, hijo), (1949), cita precisa a la pág. 551. Como cuestión de derecho, el tribunal sentenciador debe siempre imponer una sentencia indeterminada en todas aquellas causas graves que no aparejen reclusión perpetua. Lo mandatorio resulta ser la sentencia indeterminada y lo optativo la sentencia suspendida, cuando así lo aconsejen las circunstancias. No se cometió el error señalado.

En cuanto al segundo error, respecto al posible abuso de discreción del ilustrado Juez sentenciador al denegarle la libertad a prueba al acusado, después de haber transcurrido más de un año desde que se le celebró juicio, sin haber sido sentenciado, la ley aplicable son los arts. 309, 318 y 319 del Código de Enjuiciamiento Criminal de Puerto Rico, que disponen:

"Artículo 309.—(1191 Cal.) (Enmendado según la Ley de 12 de marzo de 1908, pág. 55.)—Después de una confesión o veredicto de culpabilidad, o después de dado un veredicto contra el acusado, en un caso en que se alegare haber sido éste anteriormente declarado convicto o absuelto, si no se suspende la sentencia o se concede un nuevo juicio, el tribunal señalará día para dictar sentencia, que, en casos de *felony* (delito muy grave), será cuando menos dos días después del veredicto, si el tribunal se propone continuar en sesión, mientras tanto; pero si no fuese así, entonces *será en fecha tan distante como pueda razonablemente fijarse.*

"Artículo 318.—Cuando el acusado comparezca para oír la sentencia, debe ser informado por el tribunal o, bajo la dirección de éste, por el secretario, de la naturaleza del cargo que se le hace, así como de las alegaciones de su defensa y del veredicto, si hubiere recaído alguno, y debe preguntársele si tiene alguna causa legal para demostrar que no procede dictar sentencia contra él.

"Artículo 319.—Si no se alega, o no halla el tribunal causa suficiente para que no sea dictada la sentencia, *debe ésta pronunciarse sin demora.*"

Examinados en conjunto dichos tres artículos demuestran, que nuestro Código de Enjuiciamiento Criminal, no le fija a

los tribunales de Puerto Rico, un término fijo para dictar sentencias en causas criminales de carácter grave, pudiendo dictar dichas sentencias en "fecha tan distante como pueda razonablemente fijarse, de acuerdo con las circunstancias de cada caso." La misma prohibición de que no se dicte sentencia en dichas causas, antes de haber transcurrido dos días después del veredicto, nos convence, que el legislador se dió cuenta de la importancia de concederle al juez sentenciador un período de tiempo razonable para imponer una pena justa y científica.

Cuando nuestro sistema penal no había considerado todavía otorgar a los delincuentes ocasionales, los beneficios de la sentencia indeterminada y de la libertad a prueba, ya existía en el art. 320 del Código de Enjuiciamiento Criminal de Puerto Rico, un procedimiento para que el juez sentenciador pudiera celebrar una vista adicional, para oír brevemente a las partes sobre las circunstancias agravantes o atenuantes que debían ser consideradas al momento de imponerle la pena al convicto. Si ésto era así, en un momento donde la imposición de la pena era casi una responsabilidad estrictamente judicial, no podemos presumir que tenga menor flexibilidad en los casos en que habiéndose solicitado por el convicto la libertad a prueba, el juez sentenciador tenga que recibir previamente el informe de un Oficial Probatorio sobre la posible adaptabilidad del convicto a la rehabilitación social que inspira el nuevo sistema.

Expuesto el problema en esta forma, vemos que el término de razonabilidad de que habla nuestra jurisprudencia anterior, hay que determinarlo considerando ahora, el nuevo factor de la suspensión de sentencia, si el convicto solicita el beneficio de la libertad a prueba. Siendo este un caso especial, no resulta inusitado el término de un año y un mes, si consideramos que el mismo se produce, cuando aún nuestro sistema de libertad a prueba estaba en un período experimental, que siempre significa ajuste de normas y adiestramiento del personal correspondiente.

En cuanto al tercer error, respecto a la jurisdicción asumida por el tribunal sentenciador sobre la persona del acusado, sin probarse que éste tuviera 16 años cumplidos, la Ley aplicable al caso es la Ley núm. 37 de 11 de marzo de 1915 (pág. 73), según quedó enmendada por la Ley núm. 10 de 6 de abril de 1916 (pág. 43) y por la Ley núm. 62 de 18 de julio de 1925. La sec. 19 de la Ley núm. 37 de 11 de marzo de 1915 (pág. 335), todavía en su versión original, establece que: "si la edad de un niño traído a presencia de la corte fuere objeto de controversia, la resolución del Juez [se refiere al Juez del Tribunal Tutelar de Menores] de la misma en lo que respecta a su competencia en el caso será definitiva; y con el fin de resolver la cuestión de competencia en cuanto a la edad del acusado, la corte podrá solicitar la certificación del acta del nacimiento del niño y citar como testigo a cualquier médico empleado por el Pueblo de Puerto Rico en el servicio de sanidad o en cualquier institución penal insular ... Siempre que un oficial u otra persona que arrestase a un niño, tuviera duda acerca de la edad de éste, deberá proceder con el predicho niño, de acuerdo con las disposiciones de esta ley, en la misma forma en que lo haría si el niño fuera indubitablemente menor de 16 años."

No hay duda que la intención de la Ley núm. 37 de 11 de marzo de 1915 es, que cualquiera controversia sobre la edad de un menor delincuente, sea resuelta en primera instancia, por el Tribunal Tutelar de Menores (Corte Juvenil), y no por los tribunales ordinarios que entienden en causas criminales. La Ley le impone dicha obligación a los oficiales o *cualquiera otra persona que arrestase a un niño*. De acuerdo con la ley prevaleciente en Puerto Rico cuando se aprobó la Ley núm. 37 de 11 de marzo de 1915, entre las personas con derecho a arrestar a un delincuente, estaban incluídos los Fiscales de Distrito. Por lo tanto, si durante el curso de su investigación, los Fiscales de Puerto Rico, se encuentran con un caso dudoso, donde la edad del delincuente esté en controversia, su obliga-

ción es someterlo al Tribunal Tutelar y no a los tribunales ordinarios.

·Este es un caso donde ni el oficial de orden público que practicó la detención, ni el señor Fiscal de Distrito, que ordenó el arresto, se percataron de la posible juvenilidad del delin-cuente, y por lo tanto, en vez de referir el caso al Tribunal Tutelar de Menores, se presentó acusación contra el menor. como si se tratara de una persona adulta.   No hay duda que en un caso como éste, el juez que presidía la sección criminal del tribunal ordinario, tenía facultad para suspender el pro-ceso de la acción criminal y remitir la causa al Tribunal Tu-telar de Menores, para que siguiera entendiendo en ella.   La razón por la cual no lo hizo, se comprende mejor cuando se examina la transcripción de la evidencia.   Los dos únicos instantes donde se plantea algo que pudiera considerarse, como una controversia sobre la verdadera edad del convicto, fueron los siguientes:

"Lcdo. Noriega:   Diga su nombre.
"Acusado:   Francisco Luciano Peña.
"Lcdo. Noriega:   ¿Qué edad tú tienes?
"Acusado:   17 años.
"Lcdo. Noriega:   ¿No tienes cumplidos los 17 años o cum-plidos?
"Acusado:   Bueno, más o menos.
"Lcdo. Noriega:   ¿Todavía no has llegado a 17 años?
"Acusado:   No señor."
(Transcripción de evidencia, pág. 26.)

"Lcdo. Noriega:   Señor juez, en cuanto al delito de mutilación, que Vuestro Honor acaba de declarar culpable al acusado renun-ciamos al término para dictar sentencia y vamos a solicitar se someta este caso a la oficina del Oficial Probatorio, para que ordene, queremos decir para que estudie, si este joven puede aco-gerse a los beneficios de la Ley núm. 259, según ha sido enmen-dada, diciéndole nosotros al tribunal que él no ha sido convicto anteriormente por delito alguno, que no ha estado en presidio ni en la cárcel; *tiene 17 años en este mes,* no ha ido nunca a presidio."

(Transcripción de evidencia, final de pág. 30 y principio de

pág. 31.) Como se ve, es por el propio testimonio del acusado que establece que tiene más de 16 años, aunque menos de 17 años, y es el propio abogado del acusado quien le informa al tribunal, que en el mismo mes en que estaba celebrándose la vista, o sea en el mes de julio de 1950, cumplía el acusado 17 años. Habiéndose cometido el delito en el mes de marzo de 1950, o sea cuatro meses antes, resulta claramente establecida por la propia prueba del acusado, que la anterior Corte de Distrito de Ponce tenía jurisdicción sobre la persona del acusado.

■ En cuanto al cuarto error, respecto a la conclusión de que la mano quedó mutilada, basada en el testimonio de un médico no autorizado para declarar como perito, la evidencia demuestra lo siguiente:

"Fiscal Morales: ¿Cómo se llama usted?
"Testigo: Fidel Alonso Caíñas.
"Fiscal Morales: ¿Profesión?
"Testigo: Médico Cirujano.
"Lcdo. Noriega: Aceptamos la capacidad del perito.
(Transcripción de la evidencia, pág. 7.)

Partiendo de la base que el acusado y apelante no estuviera hoy impedido de impugnar la capacidad pericial del doctor Fidel Alonso Caíñas, los propios archivos de este Tribunal, de los cuales podemos tomar conocimiento judicial, demuestran, que para la fecha en que se celebró la vista de esta causa en la Corte de Distrito de Ponce, el doctor Fidel Alonso Caíñas ejercía válidamente la profesión médica en esta isla, en virtud de una licencia provisional habiéndole este Tribunal reconocido su derecho a disfrutar de una licencia permanente como médico: *Alonso* v. *Tribunal Examinador de Médicos*, 74 D.P.R. 158, (Pérez Pimentel), (1952), cita precisa a las págs. 168 y 169.

■ En cuanto al quinto error, respecto a la renuncia del juicio por jurado, la evidencia demuestra que tal renuncia se hizo por el abogado del acusado, y la misma fué ratificada, por el acusado en persona, a preguntas del propio juez senten-

ciador.    Basta con que lo hiciera el abogado, a nombre de su representado: *Pueblo* v. *Figueroa*, ante pág. 188, (1954), (Snyder); *Pueblo* v. *Tosado*, ante pág. 434, (1954), (Belaval).

En cuanto al sexto error, respecto a la indebida asistencia de abogado, el error es totalmente frívolo.

*Debe confirmarse la sentencia apelada.*