[Crim. No. 5438.   Second Dist., Div. Three.   Jan. 16, 1956.]

THE PEOPLE, Respondent, v. ANTONIA ESCOBEDO et al., Appellants.

David Marcus and Gray, Glass & Allen for Appellants.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—Antonia Escobedo and Harvey Andrew Lockhart, Jr., were convicted of conspiracy to commit abortion and of three offenses of abortion commited on one ''Esther.'' Each made a motion for a new trial which was denied and each was sentenced to prison. They appeal from the judgments and from the orders denying their motions for new trial. The conspiracy count of the information alleged eight overt acts of the defendants. Count II charged the offense of abortion July 7, 1954, Count III July 12, 1954, and Count IV July 16, 1954, each count alleging that the defendants provided, supplied and used an instrument and other means upon the person of Esther with intent to procure a miscarriage.

The evidence taken at the trial, which was to the court, consisted of the evidence taken at the preliminary examination introduced by stipulation with a reservation of the right to introduce additional evidence.

In the brief of each appellant it is contended that there was insufficient evidence to establish the commission of any of the offenses charged. Neither appellant urges any other ground for reversal of the judgment or order. Inasmuch as each appellant discusses the same evidence and advances the same arguments in support of the claim of insufficiency, the evidence will be narrated but once, although it will relate to the case of each appellant.

There was evidence which, if believed, would establish the following facts: Esther, 17 years of age, became pregnant; she was acquainted with one James Moore, who made statements indicating that he considered himself responsible for her pregnancy; on July 7, 1954, she met Moore; Moore telephoned to Lockhart telling him that he had a girl in trouble and wanted to know if he, Lockhart, could help him (Moore); Lockhart replied that it would be $300; that there would be a lady doctor doing it at her home and there would be no danger. At the suggestion of Lockhart, Esther and Moore met him on the morning of July 7th at Bellflower Boulevard and South Street. Lockhart said he would take Esther to a place in East Los Angeles, to a lady doctor, and would be gone for about one hour and a half. Moore endeavored to cash a check at a market but was unable to cash it. The three then went to a bank in Bellflower and when the bank opened Moore cashed a check for $300, returned to Lockhart's car where Esther and Lockhart were waiting and gave Lockhart $300. Moore left and Lockhart and Esther drove to the

home of appellant Escobedo. Esther testified that while Moore was away from the car Lockhart explained to her that the procedure would be the use of a tube and medicine and would be painless; that when they reached the Escobedo house Lockhart parked the car in the street and entered the house; he returned in 15 minutes and the two entered the house; appellant Escobedo appeared from a bedroom; the two women entered the bedroom; Escobedo performed acts upon Esther which were obviously calculated and intended to procure a miscarriage. Esther and Lockhart left; Lockhart took Esther's telephone number, gave her his, and told her to telephone him if any of her girl friends got into trouble; he then drove Esther to a point near her home. He telephoned her that evening and again the following evening, when he said he would make another appointment with the lady, and arranged for a meeting with Esther; Moore drove her to the meeting with Lockhart; an appointment had not been made with Escobedo and another meeting was arranged for three days later; the meeting was held and Lockhart drove Esther to the home of Escobedo. Esther entered the house and Escobedo performed acts similar to those of the first meeting and Lockhart later drove Esther to a place near her home. They made a third trip to the Escobedo house on July 16th. On this occasion there was a repetition by Escobedo of treatment which eventually did bring about a miscarriage. Moore testified that when told of Esther's condition he telephoned to Lockhart and made an arrangement with him to take Esther to a woman represented by Lockhart to be a doctor for the purpose of having Esther relieved of her condition. Both Moore and Esther testified to the meetings with Lockhart and the payment to him of $300 as the cost of an operation.

The sole contention of the appellants is that the testimony of Esther, if it stood alone, would be insufficient as proof of any of the offenses charged and it is to be considered as if it stood. alone for the reason that the testimony of Moore was incompetent as corroboration. The argument is that Esther. although not an accessory or accomplice to the crimes charged, was nevertheless guilty of violation of section 275 of the Penal Code in submitting to the abortion; defendants could not be convicted of Counts II, III and IV (violation of Pen. Code. § 274) upon the uncorroborated testimony of Esther; Moore was an accomplice in all the offenses charged and his testimony was incompetent to furnish the required corroboration.

First, with respect to the charges of the substantive offenses of abortion: A woman who submits to an abortion

is not an accomplice of one who commits it, inasmuch as she is not subject to prosecution for that offense (Pen. Code, § 1111).

And while her testimony must have corroboration (Pen. Code, § 1108), this may be furnished by one who is an accomplice. (*People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720]; *People* v. *Clapp*, 24 Cal.2d 835 [151 P.2d 237]; *People* v. *Pollum*, 97 Cal.App.2d 173 [217 P.2d 463].) The testimony of Moore is relied upon by appellants as proof that he was an accomplice, as he doubtless was, but that same testimony was also corroborative of Esther's testimony in material respects. Moore did not see or communicate with Escobedo nor connect her with the operations but there was other evidence that did connect her.

Ned Lobretovich, a deputy sheriff, went with Esther and her sister to see Escobedo, representing himself to be Esther's brother. In answer to questions Escobedo said she remembered Esther. She asked if "Pete" (Lockhart) had sent them, and whether they wanted their money back from Pete and said she would contact him and see what she could do; that Pete had brought Esther there and said he was going to marry her; that she had only given Esther a douche; that Pete gave her none of the $300, but that she had owed him $25 and after the treatment he told her they were "square." The testimony of Moore and Lobretovich was legally sufficient as corroboration of the testimony of Esther with respect to the substantive crimes charged. The attack that is made upon the credibility of Moore in the brief of Lockhart is one that could properly be made only to the jury, or on motion for a new trial.

The evidence supports the conviction of the charge of conspiracy. As to that offense Esther was not an accomplice but her testimony nevertheless required corroboration. (*People* v. *Buffum*, 40 Cal.2d 709 [256 P.2d 317].) The facts testified to by Esther, Moore and Lobretovich established the existence of a conspiracy between Escobedo and Lockhart as charged in the information.

The judgments and orders are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

The petition of appellant Harvey Andrew Lockhart, Jr., for a rehearing was denied January 31, 1956, and his petition for a hearing by the Supreme Court was denied February 15, 1956. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.