THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CANDITA PÉREZ BERNARD, Defendant and Appellant.

No. CR-67-35.      Decided April 23, 1971.

*Benicio Sánchez Castaño, Sarah Torres Peralta,* and *Gustavo A. Del Toro Bermúdez* for appellant. *J. B. Fernández Badillo, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant having been accused and convicted of the offense of procuring an illegal abortion (§ 266 of the Penal Code, 33 L.P.R.A. § 1053), and sentenced to serve from 2 to 4 years in the penitentiary, assigns that (1) the victim's testimony cannot be corroborated by an accomplice; (2) that the trial court erred in permitting the prosecuting attorney, when he placed at the disposal of the defense two witnesses which he was not going to use, to state that the testimonies of the witnesses were corroborative and accumu-

lative; and (3) by refusing to grant appellant a suspended sentence. The verdict of guilty was unanimous. We do not agree.

Hereinafter we set forth the facts of the case.

As a result of her sexual relations with a certain man named Solano, in or about 1964 and 1965, the victim in this case got pregnant according to the determination of Dr. Víctor Pagán who examined her on August 4, 1965. As suggested by Solano, who was married, that same day both went to appellant's house whom they found later at the Public Health Unit of Santurce. Solano made arrangements with appellant for the latter to perform an abortion on the victim through the payment of $75 of which he gave her $10 in advance. Solano testified that for the purpose of having the mentioned abortion performed, the following day he took her to appellant's house where he left her and one hour later he returned and picked her up in order to bring her back the next day "to remove what had been inserted in her", that he could not bring her back because she was not feeling well; that he found out later that the victim was in the hospital.

The victim testified that after the medical examination she saw appellant the following day when Solano took her to the former's house; that the victim told Solano ". . . if I got sick as a result of what she was going to do to me so that he then would take me the following day to another woman, then she telephoned and gave him the telephone number and the name of the woman, and then he left to where the woman was and left me, the woman told him to leave me so that, then, what she was going to do to me, then, by the time he went there . . ."; that appellant put her on a bed, introduced an instrument and a rubber "Through her sexual organ"; that she felt pain "and then she put in a gauze tampon"; that then appellant told her that "if I was not bleeding the next day to tell Beddy Solano to take me to the woman whom she had called and with whom he went to talk, to take me

there. She said that she did not like to have the girls go twice to her house"; that then ". . . she put an injection in each one of my buttocks and then she gave me two pills . . . for the pain"; that on the following day, according to appellant's instructions, when she felt sick she removed from her parts what appellant had placed there and two days afterwards, upon feeling worse, at her request, her "mother looked for a neighbor who has a car and he took us to the Río Piedras hospital."

Dr. Sánchez Rivera testified that on or about August 6 or 7 of 1965, when ". . . I was on duty in the Río Piedras Municipal Hospital and at nighttime they brought me a young woman who was bleeding through the vagina, a pelvic examination, an examination of the genital canals was made to this patient, to this lady, and a fetus was found inside her vagina, a fetus with part of the placenta, and there was also a metal duct which passed through the fetus to the inside of the uterus, the viscera of the fetus were all mutilated, the abdominal walls were mutilated and it was easy to see the viscera inside. A physical examination was performed on this patient, and she was submitted to medical treatment and on the following day the patient was taken to the operating room where she underwent a uterine curettage in order to cure her completely"; that "Apparently the patient had had an intervention, she had suffered an instrumental manipulation of her genital cavities for the purpose of procuring an abortion"; that "There had been manipulation within the uterus for the purpose of removing that fetus"; that "Well, a curettage, as we commonly say, was performed on the patient next day, and several days afterwards she was discharged from the hospital."

1.—Appellant argues that the evidence shows an evident case of complicity between Solano and appellant to procure an abortion so that both could have been accused of a violation of § 266 of the Penal Code in force; that Rule 154 of the

Rules of Criminal Procedure provides that the defendant cannot be convicted of procuring or attempting to procure an abortion, or aiding or assisting therein upon the sole testimony of the woman upon or with whom the offense was committed, unless her testimony is corroborated by other evidence which in itself, and without taking into consideration the testimony of the aggrieved woman, tends to connect the defendant with the commission of the offense, this corroboration not being sufficient if it merely proves the commission of the offense or the circumstances thereof; that Rule 156 of the Rules of Criminal Procedure provides that a conviction may not be had on the sole testimony of an accomplice, unless it is corroborated by other evidence of the aforementioned quality.

On the basis of the application of these two Rules, appellant maintains that the testimonies of the aggrieved party and of the accomplice Solano should be eliminated and as a result thereof the trial court did not have any evidence whatsoever admissible at law which would at least connect appellant with the commission of the offense and much less any evidence which would somehow result sufficient for her conviction.

■ In *People* v. *Wilson*, 25 Cal.2d 341, 346 (1944), the Supreme Court of California, speaking through Mr. Justice Traynor, held that the testimony of the victim's husband in a case of abortion, to the effects that he knew that the victim's appointment with the defendant was for the purpose of an abortion, and that he took her there and paid the bill for the abortion, constituted corroborating evidence of the victim's testimony notwithstanding the fact that the husband was an accomplice of defendant in the execution of the abortion; that the victim in such case, although subject to prosecution under § 275 of the Penal Code (§ 267 of the Penal Code of Puerto Rico, 33 L.P.R.A. § 1054), is not an accomplice of the person who performs the operation or the husband, the latter being subject to prosecution under § 274 of the

Penal Code. This doctrine has been reaffirmed many times. *People* v. *Kramer*, 66 Cal. Reptr. 638, 644 (1968); *People* v. *Singer*, 32 Cal. Rptr. 701, 706 (1963); *People* v. *Collins*, 9 Cal. Rptr. 33, 38 (1960); *People* v. *Escobedo*, 292 P.2d 230 (1956). The fundamental reason is that §§ 266 and 267 of our Penal Code deal with two different offenses so that in the case at bar, although Solano was an accomplice of appellant, and therefore subject to prosecution under the aforementioned § 266, he was not an accomplice of the victim who could only be prosecuted under the above-mentioned § 267.

Solano's testimony clearly constitutes corroborating evidence of the victim's testimony in this case, and both constitute sufficient evidence to support the conviction together with the medical evidence adduced.

■ 2.—The statements of the prosecuting attorney upon waiving the testimony of the witnesses to the effect that "Their testimonies are corroborative and accumulative of different aspects of the evidence offered" are challenged before us. The defense did not object to these statements before the trial court. In *People* v. *Hernández Pérez*, 93 P.R.R. 180, 189 (1966), we disposed of this question in a manner adverse to appellant.

■■ 3.—The court did not err in refusing to grant a suspended sentence to appellant. This concession falls within the discretion of the court. It enjoys the presumption of being just and correct. *People* v. *Feliciano*, 67 P.R.R. 227 (1947). Even assuming that the report of the Probation Officer had made reference to an information of murder which was dismissed, the same is not incorrect for the law which creates and establishes the institution of the suspended sentence provides that the Probation Officer shall make "a careful investigation of the family background and social history of the person sentenced" (34 L.P.R.A. § 1027, Cum. Supp. 1966). Besides, the absence of penal antecedents alone is not suffi-

cient for an accused to obtain probation. *People* v. *Luciano*, 77 P.R.R. 564 (1954).

In view of the foregoing, the judgment rendered in this case by the Superior Court, San Juan Part, on May 23, 1966, will be affirmed.

Mr. Justice Hernández Matos did not participate herein.