EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CANDITA PÉREZ BERNARD, acusada y apelante.

Número: CR-67-35 Resuelto: 23 de abril de 1971

*Benicio Sánchez Castaño, Sarah Torres Peralta* y *Gustavo A. Del Toro Bermúdez,* abogados de la apelante; *J. B. Fernández Badillo, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Acusada y convicta del delito de causar un aborto ilegal (Art. 266 del Código Penal, 33 L.P.R.A. sec. 1053), y condenada a cumplir de 2 a 4 años de presidio, apunta la apelante que (1) el testimonio de la agraviada no puede ser corroborado por un cómplice; (2) que el tribunal de instancia incidió al permitir que el fiscal, al poner a disposición de la defensa dos testigos que no iba a utilizar, manifestara que sus testimonios eran corroborativos y acumulativos; y (3) al denegarle a la apelante una sentencia suspendida. El veredicto de culpabilidad fue por unanimidad. No tiene razón.

Relacionamos a continuación los hechos del caso.

Como resultado de sus relaciones sexuales con un tal Sr. Solano, allá para el 1964 y 1965, la agraviada en este caso resultó embarazada según determinación del Dr. Víctor Pagán que la examinó en 4 de agosto de 1965. A sugestión de Solano, quien era casado, ese mismo día ambos fueron a la casa de la apelante a quien luego localizaron en la Unidad de Salud Pública de Santurce, con quien Solano hizo arreglos para hacer abortar a la agraviada mediante el pago a la apelante de $75 de los cuales le adelantó $10. Solano testificó que con el propósito de que se lograse el aborto indicado, la llevó al día siguiente a la casa de la apelante donde la dejó y a la hora regresó y la recogió para devolverla al día siguiente "para sacarle lo que se le puso", que

no pudo regresarla porque ella se sentía mal; que luego se enteró que la perjudicada se encontraba en el hospital.

La perjudicada testificó que luego del examen médico ella vio a la apelante al día siguiente cuando Solano la llevó a casa de aquélla; que la apelante le dijo a Solano ". . . si yo me ponía mala de lo que ella me iba a hacer para que él entonces me llevara al otro día donde otra señora, entonces, ella llamó por teléfono y le dio el número a él del teléfono y el nombre de la señora y, entonces, él salió para donde la señora y me dejó a mí, la señora le dijo que me dejara a mí para, entonces, lo que me iba a hacer a mí, entonces, en lo que él iba allá . . ."; que la apelante la acostó en una cama, le introdujo una pieza y una goma "Por el órgano sexual"; que sintió dolor "y después me puso un tapón de gasa"; que luego la apelante le dijo que "si no amanecía sangrando el otro día que le dijera a Beddy Solano, que me llevara donde la señora que ella había llamado y él había ido a hablar con ella, que me llevara allá. Ella dijo que no le gustaba que fueran muchachas dos veces a la casa de ella"; que entonces ". . . me puso una inyección en cada narga [sic] y entonces me dio dos pastillas . . . para el dolor"; que al día siguiente, de acuerdo con las instrucciones de la apelante, al sentirse mal se extrajo de sus partes lo que aquélla le colocó y dos días después, al sentirse peor, a petición suya, su "mamá buscó a un vecino que tiene carro y nos llevó al hospital de Río Piedras."

El Dr. Sánchez Rivera testificó que allá para el 6 ó 7 de agosto de 1965, cuando ". . . yo de guardia en el Hospital Municipal de Río Piedras y en la hora de la noche me fue llevada a mí una jovencita que estaba sangrando por la vagina, a esta paciente, a esta señora se le hizo un examen pélvico, un examen de las vías genitales y se le encontró dentro de la vagina un feto, un feto que se le encontró parte de la placenta y se le encontró también un conducto de metal que pasaba del feto al interior de la matriz, el feto tenía

las víceras [*sic*] todas destrozadas, las paredes abdominales estaban destrozadas pudiéndose ver fácilmente las víceras [*sic*] que tenía en el interior. A esta paciente se le sometió a un examen físico y se le sometió a un tratamiento médico y al día siguiente la paciente fue llevada a la Sala de Operaciones donde se le hizo un 'degrade' uterino para acabar de curarla"; que "Aparentemente la paciente había sido intervenida, había sufrido una manipulación instrumental de sus cavidades genitales con el propósito de provocarle un aborto"; que "Se había manipulado dentro de la matriz con el propósito de sacar ese feto"; que "Bueno, la paciente al día siguiente se le hizo el raspe que corrientemente decimos, y se dio de alta varios días después."

1.—Arguye la apelante que la prueba demuestra un claro caso de complicidad entre Solano y la apelante para practicar un aborto de manera que ambos pudieron haber sido acusados de una infracción al Art. 266 del Código Penal en vigor; que la Regla 154 de las de Procedimiento Criminal dispone que no podrá declararse convicto al acusado de promover o intentar la promoción de un aborto o por contribuir o ayudar a su perpetración, por la sola declaración de la agraviada a menos que tal declaración se corrobore con alguna otra prueba que por sí misma y sin tomar en consideración la declaración de la mujer agraviada tienda a establecer la relación del acusado con la comisión del delito, no siendo suficiente esta corroboración si sólo probare la perpetración del delito o las circunstancias del mismo; que la Regla 156 de las de Procedimiento Criminal dispone que no se puede proceder a la convicción por la sola declaración de un cómplice a no ser ésta corroborada con alguna otra prueba de la calidad previamente indicada.

A base de la aplicación de estas dos Reglas, sostiene la apelante que las declaraciones de la agraviada y del cómplice Solano deben quedar eliminadas y como resultado el tribunal

de instancia no tuvo ante sí evidencia alguna admisible en derecho que siquiera conectara a la apelante con la comisión del delito y mucho menos que resultare en alguna forma suficiente para su convicción.

■ En *People* v. *Wilson*, 25 Cal.2d 341, 346 (1944), el Tribunal Supremo de California, por voz del Juez Traynor, dictaminó que el testimonio del marido de la agraviada en un caso de aborto al efecto de que él sabía que la cita de la agraviada con el acusado era a los fines de un aborto y que él la llevó y pagó la cuenta por el aborto, constituía prueba corroborativa de la declaración de la agraviada no obstante ser el marido un cómplice del acusado en la realización del aborto; que la agraviada en tal caso, aunque sujeta a ser procesada bajo la sec. 275 del Código Penal (Art. 267 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 1054), no es un cómplice del que realiza la operación de aborto ni de su marido estando estos dos últimos sujetos a ser procesados bajo la sec. 274 del Código Penal. Esta doctrina ha sido reafirmada muchas veces. *People* v. *Kramer*, 66 Cal. Reptr. 638, 644 (1968); *People* v. *Singer*, 32 Cal. Reptr. 701, 706 (1963); *People* v. *Collins*, 9 Cal. Reptr. 33, 38 (1960); *People* v. *Escobedo*, 292 P.2d 230 (1956). La razón fundamental es que los Arts. 266 y 267 de nuestro Código Penal tratan de dos delitos distintos de manera que en el caso ante nos, aunque Solano era un cómplice de la apelante, y por lo tanto procesable bajo el referido Art. 266, no lo era de la agraviada que sólo podía ser procesada bajo el referido Art. 267.

El testimonio de Solano claramente constituye prueba corroborativa de la declaración de la agraviada en este caso y ambas constituyen prueba suficiente para sostener la convicción junto a la prueba médica aducida.

■ 2.—Se impugnan ante nos las manifestaciones del fiscal al renunciar al testimonio de los testigos, de que "Sus testimonios son corroborativos y acumulativos de diferentes

aspectos de la prueba ofrecida." La defensa no objetó estas manifestaciones ante el tribunal de instancia. En *Pueblo* v. *Hernández Pérez*, 93 D.P.R. 182, 190 (1966), dispusimos de esta cuestión en forma adversa a la apelante.

 3.—No incidió el tribunal al negar a la apelante una sentencia suspendida. Esta concesión cae dentro de la discreción del tribunal. Tiene a su favor la presunción de ser justa y correcta. *Pueblo* v. *Feliciano*, 67 D.P.R. 247 (1947). Aun en el supuesto que el informe del Oficial Probatorio haya hecho referencia a una acusación de asesinato que fue archivada, la misma no es impropia pues la ley que crea y establece la institución de la sentencia suspendida dispone que el Oficial Probatorio practicará "una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada" (34 L.P.R.A. sec. 1027 Sup. Acum. 1966). Además, la ausencia de antecedentes penales no es por sí sola suficiente para que un convicto obtenga la libertad a prueba. *Pueblo* v. *Luciano*, 77 D.P.R. 597 (1954).

En vista de lo expuesto, *se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 23 de mayo de 1966.*

El Juez Asociado Señor Hernández Matos no intervino.