El Pueblo de Puerto Rico, demandante y recurrido, *v.* Ale-
jandro Lacroix Correa, demandado y peticionario.

*Número:* CE-90-462          *Resuelto:* 20 de noviembre de 1990

*Miguel A. Cabrera,* abogado del peticionario; *Norma Cotti Cruz,
Subprocuradora General,* y *Aida Ileana Oquendo Graulau, Procu-
radora General Auxiliar,* abogadas de El Pueblo.

## SENTENCIA

En relación con unos hechos alegadamente acaecidos el 15 de
noviembre de 1989, el Ministerio Público presentó ante el Tribu-
nal Superior de Puerto Rico, Sala de Carolina, unos pliegos
acusatorios contra el aquí peticionario Alejandro Lacroix Correa
en los que se le imputó a éste haber infringido el Art. 3.2 de la Ley
Núm. 54 de 15 de agosto de 1989, conocida como la Ley para la
Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A.
sec. 632, y el Art. 260 del Código Penal de Puerto Rico, 33 L.P.R.A.
sec. 4521.(1) Al ser llamado los casos para juicio, el peticionario
Lacroix Correa hizo alegación de culpabilidad —*producto de una
alegación preacordada a la cual brindó su anuencia la perjudi-
cada en el caso*— por los delitos de alteración a la paz y agresión
en su modalidad menos grave. El tribunal de instancia, contando
con el beneficio de un informe de la oficina de oficiales probatorios,
sentenció al peticionario Lacroix Correa a sufrir una pena de seis
(6) meses de cárcel en cada uno de los delitos antes mencionados

---

(1) En las acusaciones que se presentaron, se le imputó al peticionario Lacroix
Correa haberle propinado un puño y proferir palabras obcenas a la Sra. Lizette Malcún
Valencia, persona con la cual el peticionario había vivido consensualmente en el pasado, al
encontrarse con ésta en compañía de otro hombre.

y cumplir ambas penas en forma consecutiva. *Dicho foro negó los beneficios de una sentencia suspendida.*

Inconforme, el peticionario Lacroix Correa acudió vía *certiorari* ante este Tribunal.[2] Mediante Resolución de 25 de junio de 1990, le concedimos término al Procurador General de Puerto Rico para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* solicitado y dictar sentencia modificatoria de la emitida por el tribunal de instancia "a los efectos de conceder al Peticionario los beneficios de una sentencia suspendida".[3] Resolución de 25 de junio de 1990. El Procurador General de Puerto Rico compareció a esos efectos mediante escrito de 16 de julio de 1990. Una Sala Especial de este Tribunal —compuesta por el Juez Presidente Señor Pons Núñez, el Juez Asociado Señor Rebollo López y la Juez Asociada Señora Naveira de Rodón— mediante resolución mayoritaria de 20 de julio de 1990, *y luego de tener el beneficio de examinar el informe rendido por la oficina de oficiales probatorios,* le fijó al peticionario dentro del recurso de *certiorari* presentado una fianza de $1,000 para que éste pudiera permanecer en libertad hasta tanto el Tribunal resolviera el planteamiento central de si el foro de instancia incurrió o no en abuso de discreción al negarle los beneficios de

---

(2) En el recurso que se presentara, se le imputó al foro de instancia la supuesta comisión de cinco (5) errores, a saber:

"(*a*) Erró el Honorable Tribunal de instancia al imponer el máximo de pena que legalmente es capaz sin tener base fáctica para apoyar tal determinación.

"(*b*) Erró el Honorable Tribunal de instancia al imponer las penas consecutivas y negar los beneficios de una sentencia suspendida.

"(*c*) Erró el Honorable Tribunal al no darle el grado de deferencia que merece una recomendación sobre pena a imponerse cuando se hace una alegación pre-acordada y más aún cuando el Informe Pre-Sentencia carece de un hecho o evento extraordinario que justifique los agravantes.

"(*d*) Erró el Honorable Tribunal de instancia al imponerle de manera caprichosa la sentencia recurrida.

"(*e*) Erró el Honorable Tribunal de instancia al imponer las penas de forma consecutivas —a solicitud del Honorable Fiscal— en violación del acuerdo de alegación pre-acordada de imponer la multa como pena." Petición de *certiorari*, pág. 5.

(3) En esa ocasión, el Juez Presidente Señor Pons Núñez hizo constar que le "fijaría fianza en apelación al Peticionario bajo la condición de que éste permanezca alejado de la perjudicada en el caso mientras se dilucida el recurso". Resolución de 25 de junio de 1990.

una sentencia suspendida.(4) Además, se le impuso al peticionario, como condiciones especiales para que pudiera permanecer en libertad bajo dicha fianza, que se debía someter a una "evaluación sobre alcoholismo" y abstenerse "de cualquier contacto o relación de clase alguna con la Sra. Lizette Malc[ú]n Valencia". Resolución de 20 de julio de 1990, págs. 1–2.

Al estar en condiciones de resolver el recurso presentado, procedemos a así hacerlo.

I

En lo pertinente al caso ante nuestra consideración, en *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211–217 (1990), expresamos:

En lo pertinente al asunto ante nuestra consideración, hemos resuelto que la decisión o determinación de conceder o no los beneficios de una sentencia suspendida a un convicto de delito que prima facie cualifica para recibir dichos beneficios *descansa en la sana discreción* del tribunal sentenciador, *Vázquez v. Caraballo*, 114 D.P.R. 272 (1983); que a dicha determinación le cobija la presunción de ser una justa y correcta, *Pueblo v. Pérez Bernard*, 99 D.P.R. 834 (1971); que el informe que rinde al tribunal el oficial probatorio, y su recomendación sobre la concesión o no de una sentencia suspendida al convicto, *no* obliga al juez sentenciador, *Pueblo v. Martínez Rivera*, 99 D.P.R. 568 (1971); que aun cuando la carencia de antecedentes penales es una circunstancia favorable para el convicto que aspira a recibir los beneficios de una sentencia suspendida, dicha circunstancia, por sí sola, no es suficiente para recibir dichos beneficios, *Pueblo v. Luciano*, 77 D.P.R. 597 (1954), y que, en casos de alegaciones de culpabilidad, no hay nada que impida que el juez de instancia examine el expediente fiscal con el propósito de conocer los hechos que dieron lugar a la radicación de los cargos criminales y así poder estar en mejor posición de ejercer esa discreción, *Pueblo v. Feliciano*, 67 D.P.R. 247 (1947).

Discreción, naturalmente, significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto

---

(4) La Juez Asociada Señora Naveira de Rodón hizo constar que denegaría la concesión de la fianza.

"no significa poder para actuar en una forma u otra, *haciendo abstracción* del resto del Derecho . . .". (Énfasis suplido.) *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

No resulta fácil precisar cuándo un tribunal de justicia incurre en un abuso de discreción. No tenemos duda, sin embargo, *de que el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad.* Como expresáramos en *Pueblo v. Sánchez González*, ante, pág. 200, "[d]iscreción es, pues, una *forma de razonabilidad aplicada al discernimiento judicial* para llegar a una conclusión justiciera . . .". (Énfasis en el original.)

En lo que respecta al caso ante nuestra consideración, surge del informe que en el presente caso rindiera la oficina de oficiales probatorios que el peticionario Lacroix Correa no tiene récord de antecedentes penales, que posee un bachillerato en contabilidad, que tiene un historial de hombre trabajador (actualmente desempeñándose como representante de ventas de una compañía de alquiler de autos, donde devenga un salario mensual de $1,580), y que es padre de dos (2) niños adolescentes de un matrimonio anterior, quienes dependen de él para su sustento. Conforme surge de dicho informe, entiende el oficial probatorio que rindió el mismo que el peticionario "*observa una conducta social adecuada* a excepción de alguna *visión desvirtuada* de la figura femenina como consecuencia de sus experiencias maritales pasadas. Eso lo incita a ser agresivo con las mujeres al entrar en contacto con el licor". (Énfasis suplido.) Informe pre-sentencia, pág. 6.

A base de lo anteriormente expresado, somos del criterio que el peticionario Lacroix Correa es una persona que cualifica para recibir los beneficios de una sentencia suspendida al amparo de las disposiciones del Art. 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027. *Debe, sin embargo, abstenerse de ingerir bebidas alcohólicas y someterse a cualquier tratamiento que le sea recomendado respecto a su problema con el alcohol.*[5] Naturalmente deberá, mientras disfruta de la libertad a prueba

---

[5] Mediante Moción de 22 de agosto de 1990, la representación legal del peticionario informó que éste ya se había sometido a la evaluación que ordenáramos mediante nuestra

que hoy le concedemos, igualmente abstenerse de cualquier contacto con la perjudicada Malcún Valencia.

Por las razones antes expresadas, *se expide el auto de "certiorari" presentado y se dicta sentencia modificatoria —a los extremos antes indicados— de la emitida por el tribunal de instancia, por lo que se devuelve el caso a dicho foro para procedimientos ulteriores compatibles con lo aquí resuelto.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Hernández Denton emitió opinión disidente, a la cual se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Negrón García no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Por entender que los actos cometidos por el recurrente justifican su reclusión, disiento de la sentencia emitida por este Tribunal que le concede los beneficios de una sentencia suspendida.

I

El peticionario Alejandro Lacroix Correa convivió consensualmente durante un (1) año con la víctima Lizette Malcún Valencia. La relación terminó el 15 de septiembre de 1988 porque él agredía y le profería improperios a la víctima cada vez que se embriagaba, haciendo imposible la convivencia.

---

Resolución de 20 de julio de 1990 y que estaba recibiendo tratamiento sobre "el manejo del uso del alcohol" por parte de la Administración de Corrección.

Dos (2) meses más tarde, mientras Lizette esperaba el cambio de luz en una intersección, el peticionario la volvió a agredir física y verbalmente. En esa ocasión, él introdujo la mano derecha por la ventana del vehículo donde viajaba ésta, le dio un puño debajo del pómulo derecho y le dijo que era una "puta, sucia y cabrona". Inmediatamente después invitó a un vecino que la acompañaba en el carro, el Sr. Luis Maldonado Bonilla, a pelear. Como ella estaba herida, Maldonado Bonilla tomó el volante y se dirigieron al Cuartel de Carolina Norte donde informaron lo acontecido. De allí, se dirigieron al Hato Rey Community Hospital para atender la herida de la víctima. Le cogieron *nueve* puntos de sutura en la cara y, para evitar una infección, le recetaron antibióticos. Por la naturaleza de la herida, le dieron una cita para el día siguiente.

Posteriormente se presentaron cargos contra Alejandro Lacroix por alteración a la paz y por violación al Art. 3.2 de la Ley Núm. 54 de 15 de agosto de 1989, Ley para la Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A. sec. 632.

Después de los trámites iniciales, se produjo un acuerdo con el fiscal, y con la anuencia de la perjudicada se redujeron los cargos a agresión agravada en su modalidad menos grave y alteración a la paz. El agresor hizo alegación de culpabilidad por los delitos imputados y el tribunal lo declaró culpable. La defensa solicitó como pena el pago de una multa y el fiscal no lo objetó. Posteriormente, el acusado fue referido a la oficina de oficiales sociopenales para que se determinara si cualificaba para los beneficios de una sentencia suspendida.

En el acto de pronunciamiento de sentencia el tribunal impuso una pena de seis (6) meses de prisión por cada delito a cumplirse consecutivamente. El agresor solicitó reconsideración de la sentencia, pero ésta fue declarada sin lugar. Acudió ante nos mediante *certiorari* alegando, fundamentalmente, que se violó el acuerdo que se dio tras la alegación de culpabilidad y que se le debió conceder los beneficios de la sentencia suspendida.

Por entender que el Tribunal Superior actuó correctamente al imponer una pena de reclusión, estimamos que debe confirmarse el dictamen. Estamos ante unos hechos que denotan un alto grado

de violencia y el foro de instancia no abusó de su discreción al denegar el beneficio de una sentencia suspendida. Lo contrario reflejaría una desidia e insensibilidad palmaria ante el gran problema de la violencia contra la mujer que prevalece en nuestra sociedad.

## II

La Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. secs. 1026–1029, establece los requisitos que debe reunir un convicto para acogerse a los beneficios de una sentencia suspendida.

En lo pertinente, requiere:

(1) Que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada; y a la cual no se hubieren suspendido los efectos de una sentencia anterior por delito grave:

(2) que las circunstancias en que se cometió el delito *no eviden-cien que existe en el autor del mismo un problema de conducta o de carácter* para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico;

(3) que el juez sentenciador tenga ante sí un informe que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada, y que, *del contenido de ese informe, pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad.* El tribunal sentenciador podrá, a su discreción, además de poner a prueba a la persona sentenciada, imponer una multa cuya cuantía quedará a discreción del tribunal, disponiéndose, además, que la persona puesta a prueba podrá ser requerida para que, mientras estuviere en libertad a prueba, resarza a la parte perjudicada de los daños que le hubiere

ocasionado o para que asuma la obligación de corregir el mal causado por su acto delictivo. Disponiéndose, además, que una vez puesta a prueba, la persona quedará bajo la custodia legal del tribunal hasta la expiración del período fijado en su sentencia. (Énfasis suplido.) 34 L.P.R.A. sec. 1027.

Sin ulterior fundamento que no sea el mero hecho de que Lacroix Correa no tenía antecedentes penales previos y que era un hombre trabajador con hijos, este Tribunal revoca al foro de instancia y concluye que el agresor cumple con los requisitos enumerados en el Art. 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027.

Si bien es cierto que el peticionario agresor cumple con el primer requisito, hemos señalado que la circunstancia de no tener antecedentes penales por sí sola no es suficiente para que un convicto obtenga libertad a prueba. *Pueblo v. Luciano*, 77 D.P.R. 597, 601 (1954). Así lo reconoce la sentencia al citar a *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990).

Sin embargo, al revocar el dictamen recurrido, la opinión mayoritaria no toma en consideración el segundo criterio de la ley. De los autos claramente se desprende que existe en el agresor un serio problema de violencia contra la mujer que requiere para su corrección algo más que una sentencia suspendida en unión a un programa de alcoholismo. Su historial también revela que había sido denunciado previamente por agresiones contra otras mujeres con quienes había convivido.

Si consideramos las circunstancias en las que ocurrió la agresión en este caso y los antecedentes del agresor, procede la confirmación de la decisión del Tribunal Superior porque el delito cometido refleja que existe en el peticionario un serio problema de conducta y que para la debida protección de la comunidad se requiere su reclusión.

Al evaluar los méritos de este caso no debemos pasar por alto que "[l]a violencia es uno de los problemas sociales más serios y alarmantes a que nos enfrentamos hoy en día. Particularmente la violencia contra la mujer en sus distintas manifestaciones y el abuso de menores, lo que ha ido en aumento en los últimos

tiempos". (Escolio omitido.) *Pueblo v. Esmurria Rosario*, 117 D.P.R. 884, 890 (1986), voto particular de la Juez Asociada Señora Naveira de Rodón.

Un estudio psicográfico realizado sobre la mujer puertorriqueña revela que el problema que la mayoría de las encuestadas identifica como más severo es la violencia conyugal. Un 58% de las mujeres así lo manifestó. McCann-Erickson, *Una Mujer, Mil Caras*, Estudio psicográfico de la mujer puertorriqueña, 1990, pág. 22.

Al tomar en consideración los niveles a los que han llegado las estadísticas sobre la violencia doméstica, este porcentaje no nos deben sorprender. Según se desprende de los informes de la Policía de Puerto Rico de noviembre de 1989 a mayo de 1990, se han informado 7,806 incidentes de violencia doméstica. Y. Zayas, *La Ley Núm. 54 y la protección de la familia puertorriqueña*, Ponencia al Sexto Congreso Internacional sobre Derecho de Familia, 18 de octubre de 1990. Además, de los informes de la Comisión para los Asuntos de la Mujer se desprende que el año pasado 83.88% de los casos de violencia contra la mujer ocurrieron a manos de sus esposos o compañeros.

Este Tribunal no debe asumir una actitud pasiva ante tan grave situación. Tampoco debemos ignorar que muchas mujeres víctimas del maltrato y de la violencia consideran que el proceso judicial no atiende adecuadamente sus necesidades.

> En la presencia de una orientación masculina en todo el sistema legal[,] permeado éste por las mismas condiciones y prejuicios que rodean este problema, concurrimos con Ford (1983) cuando éste afirma que *nuestras instituciones jurídicas son al presente instrumentos ineficaces en su intervención en las situaciones de violencia contra las mujeres en la vida conyugal. No le ofrecen, por tanto, alternativas o remedios a las mujeres victimizadas por esta forma de violencia.* Silva Bonilla, *¡Ay! ¡Ay! ¡Ay! Amor no me quieras tanto (El marco social de la violencia contra las mujeres en la vida conyugal)*, Estudio realizado para el Centro de Investigaciones Sociales de la Universidad de Puerto Rico, pág. 38.

Señala, además, que "*la poca probabilidad de castigo* de ese comportamiento es un factor más en la larga lista de condiciones

que inhiben a las mujeres de buscar remedio legal y social a esta forma de ataque a su persona". (Énfasis suplido.) Silva Bonilla, *op. cit.*, pág. 34.

La situación no es menos grave en Estados Unidos:

> By some estimates, almost half of all marriages are marked by battering episodes and many more women are battered by their boyfriends, fiances or lovers. Yet battering *per se* occupies very little of the legal landscape, at least as measured by law review pages and published opinions. *"Law" seems to come in only at the extremes, as, for instance, when long-term victims of battering escape through the unusual route of killing their tormenters.* C.A., Littleton, *Women's Experience and the Problem of Transition: Perspectives on Male Battering of Women*, 1989 U. Chi. Legal F. 27–28 (1989).

Conscientes de este grave problema social, nos corresponde el deber ineludible de asegurar que las instituciones judiciales sean instrumentos rápidos y efectivos para vindicar los derechos de las víctimas del maltrato y no un obstáculo adicional que impida que las mujeres recurran al sistema de justicia criminal.

Por otro lado, el dictamen emitido por este Tribunal condiciona la sentencia suspendida a que el peticionario asista a un programa de alcoholismo. Entendemos que en el caso de autos no hay prueba de que el problema de violencia del agresor se resolverá remitiéndolo a este programa. Además, aun concediéndole al agresor que tiene un problema de alcoholismo, del expediente *no* se desprende que estuviera ebrio la mañana en que ocurrieron los hechos. El remitir al peticionario a un programa de alcoholismo no resolvemos su problema. No se puede hacer caso omiso al hecho de que en ocasiones la violencia es un problema separado e independiente del abuso del alcohol.

> Aunque los hombres intentan excusar su comportamiento aludiendo ocasionalmente a los "celos" o a la "bebida" (González y Díaz) en realidad *cualquier aspecto puede ser ofrecido en el orden de la percepción subjetiva de los hombres como "razón para su atropello contra las mujeres"*. Así, una comida fría, o "muy" caliente, o no preparada a tiempo; o la ausencia temporera de las mujeres del

hogar cuando [é]stos llegan al mismo; el que ellas utilicen ropa que a ellos no les agrada; o escuchar a los niños pequeños llorando . . .; cualquier leve episodio doméstico puede ser elevado, en la conciencia de los agresores, a la categoría de agente provocador de su ira y de su violencia. Silva Bonilla, *op. cit.*, pág. 25.

Tampoco encontramos fundamento en el informe sociopenal para que el peticionario quede libre. De dicho informe se desprende que el convicto aceptó la comisión del delito y lo justificó alegando que los hechos fueron provocados por la perjudicada. También se refleja que en ningún momento mostró arrepentimiento por la comisión de sus actos. En el informe se indica, paradójicamente, que éste "observa una conducta social adecuada a excepción de alguna visión desvirtuada de la figura femenina como consecuencia de sus experiencias maritales pasadas". Informe pre-sentencia, pág. 6. Es evidente que, además de la pena de reclusión, la conducta exhibida por el peticionario requiere que se le someta, adicionalmente, a terapia sicológica o siquiátrica para atender las causas de su problema mental y de su agresividad contra las mujeres. De lo contrario, sugerir otra solución causaría no sólo que el peticionario no cumpliera con su responsabilidad social por su conducta delictiva, sino que tampoco se rehabilitará y, desafortunadamente, seguirá siendo un peligro para las mujeres con quien se relacione en el futuro.

Dejar libre al agresor sin más sanción que una sentencia suspendida pone en peligro la integridad corporal y quizás hasta la vida de no solamente la víctima, sino también la de cualquier mujer con quien se relacione en el futuro.

En estas circunstancias, la decisión de este Tribunal no responde adecuadamente a los problemas de violencia contra la mujer que afectan a la sociedad puertorriqueña. Aunque en nuestro sistema de justicia criminal el objetivo fundamental es la rehabilitación, esto no significa que al ejercer nuestra discreción en casos de sentencias suspendidas debamos ignorar la seriedad de este tipo de crimen y el peligro para la comunidad de estos agresores. "Restarles importancia limitaría la efectividad de la intervención judicial en este tipo de casos y agravaría un ya

ingente problema social" (*Pueblo v. Esmurria Rosario,* supra, pág. 894) y podría comunicar la impresión de que este Tribunal comparte la actitud de algunos sectores gubernamentales de subestimar la importancia del problema de la violencia contra la mujer. Como nuestra conciencia nos impide avalar esta conducta antisocial tan nociva, disentimos.

Por las razones expuestas anteriormente, confirmaríamos la decisión del foro de instancia que deniega los beneficios de una sentencia suspendida e impone una pena de un (1) año de reclusión.